TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-08-00607-CR






Marco Antonio Munoz, Appellant


v.


The State of Texas, Appellee






FROM COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY,

NO. C1CR07-218318, HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted appellant Marco Antonio Munoz of driving while intoxicated. See
Tex. Penal Code Ann. § 49.04 (West 2003). Munoz was sentenced to 180 days' imprisonment and
assessed a $2,000 fine, probated to fourteen months of community supervision and a $1,800 fine. 
In three issues on appeal, Munoz argues that the trial court (1) improperly limited his trial
counsel's voir dire questions regarding the venire panelists' ability to consider the full range of
punishment; (2) improperly imposed a time limit on voir dire; and (3) demonstrated actual bias
against Munoz and his counsel through its statements during voir dire. Because the trial court did
not err in restricting Munoz's voir dire and did not demonstrate bias against Munoz or his counsel,
we affirm the judgment of conviction.



BACKGROUND

 Munoz was arrested for driving while intoxicated on September 7, 2007. He was
charged by information and went to trial on August 18, 2008. At jury selection, the trial court
allotted thirty minutes to each side to conduct voir dire. Neither the State nor Munoz objected to the
time limit or requested additional time.

 During its voir dire, the State questioned the venire panel regarding their ability to
consider the full range of punishment for the charged offense, a Class B misdemeanor DWI. The
State told the panel:


Now, the other thing that you will have to do is, if you believe that the defendant is
guilty beyond a reasonable doubt, you'll have to assess punishment, and the
punishment range is anywhere from three days up to the maximum of 180 days. And
to be a juror on this panel, you have to be able to consider the full range. So you
have to imagine in your mind a set of circumstances where three days is appropriate
for somebody and all the way up to 180 days is appropriate. 



The State then asked the panel, row by row, if anyone "would have trouble" considering the entire
range of punishment. No panelists indicated they would.

 Defense counsel also spoke to the panelists about the requirement that they consider
the full range of punishment during his voir dire. (1) He then asked panelist one whether she thought "a
three-day sentence is something that would be sufficient to send the message about DWI." The State
objected that defense counsel was asking an improper commitment question. See Sanchez v. State,
165 S.W.3d 707, 712 (Tex. Crim. App. 2005) (drawing distinction between questions "intended to
discover bias against the law" and questions aimed at "determin[ing] how jurors would respond to
the anticipated evidence and commit them to a specific verdict based on that evidence"). Defense
counsel then argued that he could commit the panelists on their ability to give the minimum sentence
because they are required to be able to consider the full range of punishment and, in this context, to
consider means to give:


If somebody ever said, I could consider probation for your loved one, I would never
give it, but I could consider it, just like flapping my arms and flying like a bird, I
could consider it. I would never do it. I could never give it. Is that a fair definition
of "consider"? Who thinks that's a fair definition of "consider"?


What about this: In order to be able to consider, you have to actually be able to give
it. Does that make sense, [panelist twelve]?



The trial court interrupted defense counsel, saying, "Well, there's actually a difference and I think
the courts have dealt with that difference." The Court then sustained the State's earlier objection as
to form and told defense counsel, "If you want to ask it in a different form, you're certainly able to
do so." The following exchange then took place:


Defense: Is there anyone who thinks here that they would be able to consider
something that they would never, ever do?


Panelist: I don't understand the question.


Defense: Exactly. I'm with you in the same place. What I'm trying to figure
out is, there are some people who say three days is never enough
punishment, and then a lot of times they come back and they can say,
well, I could consider it, but then what do they say, [panelist eight]? 
But I'd never give it, to which I'd say, is that a fair definition of
"consider"?


The Court: [Counsel]--


Defense: Yes, Judge.


The Court: --I think that I have sustained the objection.


Defense: Right. And now, Judge, I'm conducting voir dire as to find out these
biases of these jurors, which will help me effectively exercise my
peremptory challenges. So the data that I am getting is useful to me
in representing Marco. So I would like to continue asking, not for
purposes of committing this jury, but just for the purposes of getting
data, which I believe is allowed under Standefer, Maddox, Nunfio,
and all the cases that I've read. (2)


The Court: Well, the State has objected, I believe, that your--what you're
attempting to do is define "consider" in a way that is not the
definition in statutory law, and--


Defense: I mean, if you can show me the law, Judge, I'd be happy to read it. 
I just know I'm not aware of it. Now I'm just trying--


The Court: It would be the case that I believe that you were overturned on appeal.


Defense: The one that's still pending in front of the court of criminal appeals
and probably going to come back the other way next month, that one?


The Court: Right now the law is that you must be able to consider the full range
of punishment, because the fact of the matter is you do not know what
you will--what you will find out once you hear the evidence. Okay? 
You need to be able to consider the full range. If you cannot imagine
a circumstance where you could give three days, then you say no, I
cannot consider the full range of punishment.


Defense: Well, I believe that was the first question I asked where I said some
people say they will never give three days, which is what they
objected to, which is what you sustained.


The Court: All right.


Defense: Now may I ask that question?


The Court: If you want to have each person answer that question, I have no
problem with that.


Defense: I think now we all understand the question, and I'm saying that I
--makes sense that some people would never, ever, ever give three
days in jail to someone they found guilty of DWI. And I want to
make sure that you understand that--


State: Again, I don't think that's the question that--


The Court: That's not the question.


Defense: Then move to strike.

 


Defense counsel then went on to discuss a possible scenario that might lead a jury to assess the
maximum punishment, before saying:


[B]ut that's an easy case to establish people's minds of the worst drunk driver ever,
but for some people the least egregious set of facts that they can conceive of, even
those, maybe a week, maybe ten days, but three days is just never going to be [an]
adequate deterrent, adequate punishment, adequate reason for what we have
punishment for, and that's my question. Does it make sense, [panelist one]? I mean,
tell me what you think--



The trial court again interrupted defense counsel.


The Court: It's a yes or no. Look, first of all, you're out of time. Second of all,
it's a question, yes or no, can you consider the full range of
punishment, which on a Class B misdemeanor DWI is anywhere
between three and 180 days. If you can consider that, the answer is
yes. If you cannot consider it, then the answer is no. And we need to
know one way or the other. I believe [counsel for the State] asked
you this question and asked you to raise your hand.


Defense: Your Honor, I'm going to object to this, because it seems to me like
you're--


The Court: [Counsel], you do not have the floor.


Defense: --trying to tell this jury what the answer you want them to give.


The Court: [Counsel], you do not have the floor.


Defense: I believe it's my voir dire, Your Honor. I believe I can conduct voir
dire.


The Court: [Counsel], please have a seat.


Defense: Your Honor, I would like to conclude my voir dire. I would like to
identify jurors who I have had answers to questions which I believe
would lead to possible strikes for cause, and I need to--


The Court: So noted.



The trial court then again instructed defense counsel to have a seat and sent the jury out of the room.

 Outside the presence of the jury, the trial court gave defense counsel the opportunity
to make a proffer of the additional questions he wanted to ask the venire panel. Defense counsel first
requested a mistrial, based on the trial court's statement that defense counsel had appealed and lost
on the question of how to define "consider." After the trial court denied his request, defense counsel
stated that he wished to question venire panelists one, seven, and thirteen, as well as all the panelists
from the third and fourth rows, regarding their ability to consider giving the minimum three-day
sentence. The trial court granted his request as to panelists one, seven, and thirteen and asked
defense counsel, "So any other--anything else before we go over who else might need to come
before the Bench?" Rather than answering the trial court, defense counsel asked the State if it
wanted to question anyone on the first two rows. After the State made its request, the trial court
again asked defense counsel if he had anyone else to question on the first two rows, and he
responded "No." The Court then asked both sides about the third row, and defense counsel said,
"No, I don't have any others other than that."

 During individual questioning at the bench, defense counsel asked panelists one,
seven, and thirteen whether they could "consider giving" the three-day minimum sentence. Panelists
one and seven said they could, panelist thirteen said, "I think that's too low." The trial court granted
Munoz's motion to strike panelist thirteen for cause, and Munoz used peremptory strikes against
panelists one and seven. Munoz did not request any additional peremptory strikes nor express any
concern that he was not able to thoroughly voir dire any of the panelists selected to serve on the jury.


DISCUSSION

Restrictions on Defense Voir Dire

 In his first and second points of error, Munoz contends that the trial court improperly
limited his ability to question the venire panel regarding the range of punishment.

 The voir dire process allows counsel to determine if any venire panelist is biased for
or against one of the parties or the relevant law and facilitates the intelligent use of peremptory
strikes. See Sanchez, 165 S.W.3d at 711. Therefore, the scope of a permissible voir dire
examination is necessarily broad to enable counsel to discover any potential bias or prejudice. Id. 
At the same time, the trial court is given broad discretion to control the voir dire examination of
the venire and may impose reasonable restrictions on the questions asked and the length of the
voir dire examination. Ratliff v. State, 690 S.W.2d 597, 599 (Tex. Crim. App. 1985). "These
two principles--the right of counsel to question veniremembers and the right of the trial court to
control voir dire and impose reasonable restrictions--co-exist and must be harmonized."  Id.; see
also Morris v. State, 1 S.W.3d 336, 340 (Tex. App.--Austin 1999, no pet.).

 We review a trial court's restrictions on jury voir dire for an abuse of discretion.  See
Barajas v. State, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); Morris, 1 S.W.3d at 340. A trial court
abuses its discretion when it prohibits a proper question about a proper area of inquiry, see Barajas,
93 S.W.3d at 38, or when it arbitrarily limits the amount of time allowed for voir dire examination, 
see Morris, 1 S.W.3d at 339. 

 Munoz first argues that the trial court improperly prevented his counsel from asking
questions of the venire panel regarding their ability to consider the minimum punishment of
three days. Bias against the range of punishment is a proper area of inquiry during voir dire for both
challenges for cause and peremptory strikes. See Standefer v. State, 59 S.W.3d 177, 181 (Tex. Crim.
App. 2001) ("[A] prospective juror must be able to consider the full range of punishment provided
for an offense or be challengeable for cause."). However, an otherwise proper question is
impermissible if it attempts to commit the venire panelist to a particular sentence based on particular
facts, see Barajas, 93 S.W.3d at 38; Standefer, 59 S.W.3d at 181, or is confusing or misleading, see
Howard v. State, 941 S.W.2d 102, 108 (Tex. Crim. App. 1996); Bolden v. State, 73 S.W.3d 428, 430
(Tex. App.--Houston [1st Dist.] 2002, no pet.). When the trial court sustains an objection to the
form of a question but does not restrict counsel from pursuing the underlying area of inquiry,
"counsel must rephrase the improperly phrased question or waive the voir dire restriction." Bolden,
73 S.W.3d at 431 (citing Howard, 941 S.W.2d at 108; Trevino v. State, 815 S.W.2d 592, 601
(Tex. Crim. App. 1991)). 

 Here the trial court did not restrict Munoz's counsel from examining the venire panel
on their ability to consider the entire range of punishment. Rather, it simply ordered counsel to re-phrase his question so as to avoid improperly committing the panelists to giving the three-day
minimum sentence under specific circumstances, see Standefer, 59 S.W.3d at 177 (question is
improper if it includes facts in addition to those necessary to establish challenge for cause), or
confusing the jury with a definition of "consider" not found in Texas statutory or case law, cf.
Lagrone v. State, 942 S.W.2d 602, 609 (Tex. Crim. App. 1997) (trial court does not abuse its
discretion by refusing to permit counsel to question veniremember regarding his definition of the
term "probability"); Wheatfall v. State, 882 S.W.2d 829, 835 (Tex. Crim. App. 1994) (trial court
does not abuse its discretion by refusing to permit counsel to question veniremember regarding his
definition of the term "deliberately"). Munoz's counsel, rather than rephrasing the question,
continued to expound upon his understanding of the meaning of the word "consider." When he
asked the panel about his definition, the only panel response was "I don't understand the question." 
At that point, the trial court stepped in and accurately and succinctly explained the requirement to
the jury, saying, "You need to be able to consider the full range. If you cannot imagine a
circumstance where you could give three days, then you say no, I cannot consider the full range of
punishment." Defense counsel then asked for permission to ask that question and was granted it. 
But instead of asking that question, he launched into a hypothetical and then asked a panelist, "Does
that make sense? What do you think?" The trial court again stepped in to prevent what it perceived
to be an overly broad formulation of the question. See Smith v. State, 703 S.W.2d 641, 645
(Tex. Crim. App. 1985) (seeking panelists' "thoughts" is improperly broad; it presents general topic
for discussion rather than seeking particular information).

 The record does not reveal any abuse of discretion by the trial court. See Duffey
v. State, 249 S.W.3d 507, 512 (Tex. App.--Waco 2007, pet. ref'd) (trial court does not abuse
discretion by excluding confusing and improperly phrased question). Rather, it shows that defense
counsel was given several opportunities to rephrase his improperly phrased questions and even
given approval for a specific form of the question, which he then failed to ask. Instead, defense
counsel used the rest of his allotted time to continue asking improper questions of the jury
regarding the definition of "consider." Furthermore, defense counsel was later given another
opportunity to question individual panelists at the bench regarding their ability to consider the full
range of punishment.

 Even if the trial court's rulings on Munoz's discussion of the definition of "consider"
had been error, it was harmless. See Gonzales v. State, 994 S.W.2d 170, 171 (Tex. Crim. App. 1999)
(stating that trial court's impermissible exclusion of proper question during voir dire is subject to
harmless-error analysis). The trial court provided the jury with an accurate explanation of the
requirement that the jury be able to consider the full range of punishment and allowed trial counsel
the opportunity to question individually the jurors about whom he expressed concerns. None of
these jurors ultimately served on the jury. Therefore, we are convinced beyond a reasonable doubt
that Munoz was not harmed by the trial court's rulings on the form of the range of punishment
questions. Gonzales, 994 S.W.2d at 171 (right to pose proper questions during voir dire examination
is included within constitutional right to counsel); Howard, 941 S.W.2d at 108 (same); Tex. R. App.
P. 44.2(a) (court of appeals must reverse for constitutional error unless it determines beyond a
reasonable doubt that error did not contribute to conviction or punishment). We overrule Munoz's
first point of error.

 Munoz next argues that the trial court improperly imposed a time limit on defense
counsel's voir dire when it stopped him during his last attempt at questioning the panel regarding
the range of punishment. To determine whether the imposition of a time limit on voir dire was an
abuse of discretion, we ask: (1) whether defense counsel attempted to unnecessarily prolong the
voir dire; (2) whether the questions that he was not permitted to ask were proper voir dire questions;
and (3) whether the defendant has shown that any unexamined panelists actually served on the jury. 
See Ratliff, 690 S.W.2d at 600; Wappler v. State, 183 S.W.3d 765, 773 (Tex. App.--Houston
[1st Dist.] 2005, pet. ref'd); Morris,1 S.W.3d at 340.

 Here, Munoz's counsel was able to conduct a thorough voir dire on the panelists'
attitudes toward drinking alcoholic beverages, the accuracy of field sobriety tests, and the legal
definition of "impairment" before questioning them regarding the range of punishment. At the time
he was cut off, however, defense counsel was prolonging voir dire by continuing to expound on his
definition of "consider" despite the unfavorable ruling from the trial court and even after receiving
approval for a properly phrased question. It was the improperly phrased and confusing questions
regarding his definition that defense counsel was not permitted to ask. After the jury was sent out
of the room, defense counsel stated that his objection to being cut off was that there were certain
individual panelists--specifically panelists one, seven, and thirteen, and all those on the third and
fourth row--that he needed to question further in order to adequately represent Munoz. The
trial court then granted permission for defense counsel to question panelists one, seven, and thirteen
individually on their ability to consider the full range of punishment. Munoz did not make a proffer
of any other questions that counsel desired to ask the entire panel or any individual panelists. 
Further, each of the three panelists defense counsel did question individually were eventually struck. 
The record does not indicate that Munoz sought any additional peremptory strikes, nor does it
indicate that any of the unexamined panelists on the third or fourth row served on the six-person
jury. (3) See Morris, 1 S.W.3d at 340 (to show abuse of discretion through imposition of voir dire time
limit, defendant must show that unexamined panelist actually served on jury); cf. Green v. State,
934 S.W.2d 92, 105 (Tex. Crim. App. 1996) (to preserve error for denial of valid challenge for
cause, appellant must show he used peremptory challenge on that juror, that all his peremptory
challenges were exhausted, that his request for additional strikes was denied, and that an
objectionable juror sat on jury). Therefore, we hold that the trial court did not abuse its discretion
in imposing a time limit on defense counsel's voir dire examination. We overrule Munoz's second
point of error.


Alleged Bias

 In his third point of error, Munoz contends that the trial court "made improper and
inaccurate statements before the venire that exhibited a personal prejudice against appellant's
counsel." Munoz does not point to any particular statements or cite to the record, nor does he point
to any legal authority to explain how these unspecified statements demonstrate bias.  See Tex. R.
App. P. 38.1(i) (appellants' brief must contain appropriate citations to authorities and the record).

 In the absence of clear proof to the contrary, we presume a trial judge is impartial and
unbiased. See Roman v. State, 145 S.W.3d 316, 319 (Tex. App.--Houston [14th Dist.] 2004,
pet. ref'd). To warrant reversal for bias, statements by the trial court must demonstrate bias "of such
a nature and to such an extent as to deny a defendant due process of law." (4) Wesbrook v. State,
29 S.W.3d 103, 121 (Tex. Crim. App. 2001).

 We have conducted a thorough review of the statements the trial court made before
the venire panel and see no statements that indicate bias. While the trial court ruled against Munoz
and asked him to rephrase his questions several times, "judicial rulings alone almost never constitute
a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994); see
also Garcia v. State, 246 S.W.3d 121, 147 (Tex. App.--San Antonio 2007, pet. ref'd). Furthermore,
"expressions of impatience, dissatisfaction, annoyance, and even anger" do not constitute bias, and
"[a] judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's
ordinary efforts at courtroom administration--remain immune." Liteky, 510 U.S. at 556; see also
Garcia, 246 S.W.3d at 147. Therefore, even the trial court's statements that prompted Munoz's
request for a mistrial--her remark that defense counsel had "been overturned" on appeal--and her
instructions for counsel to sit down after he had reached his time limit do not support an inference
of bias. We overrule Munoz's third point of error on appeal.


CONCLUSION

 Having overruled all points of error on appeal, we affirm the judgment of conviction.


__________________________________________

 Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: September 23, 2009

Do Not Publish
1. Defense counsel's examination regarding the range of punishment came near the end of
his voir dire, after he had thoroughly questioned the panelists regarding their attitudes toward
drinking alcoholic beverages, the accuracy of field sobriety tests, and the legal definition of
"impairment," among other issues.
2. See Standefer v. State, 59 S.W.3d 177 (Tex. Crim. App. 2001); Maddux v. State,
862 S.W.2d 590 (Tex. Crim. App. 1991), overruled by Standefer, 59 S.W.3d at 180-81 ("Because
Maddux was wrongly decided and produces inconsistency in our precedent, we overrule that
decision."); Nunfio v. State, 808 S.W.2d 482 (Tex. Crim. App. 1991), overruled by Barajas v. State,
93 S.W.3d 36, 40 (Tex. Crim. App. 2002) ("We may overrule a prior case when the case was badly
reasoned or is unworkable. The holding in Nunfio meets both criteria, and therefore, we
overrule it.").
3. After accounting for absent panelists and the panelist who was struck for cause, the
trial court noted that only the first fifteen panelists were in the pool for peremptory strikes. Munoz
did not, at that time or any other time, express concern that there were any panelists from the third
or fourth row who were in the pool whom he needed to examine regarding their ability to consider
the full range of punishment.
4. Munoz moved for a mistrial on the basis of the trial court's statement that defense counsel
had been "overturned on appeal," arguing that the statement "is factually incorrect, and even if it
were correct, I believe that is an improper statement to make in front of the jury in [this] case."
However, he did not suggest at trial that the court's comments were indicative of bias, nor did he
request that the judge recuse herself. So, to the extent Munoz argues that the trial court's alleged
bias warranted recusal, he has not preserved error. See Owens v. State, 202 S.W.3d 276, 278
(Tex. App.--Amarillo 2006, no pet.); Harris v. State, 160 S.W.3d 621, 625 (Tex. App.--Waco
2005, no pet.). To the extent that Munoz argues that the trial court's alleged bias warranted
disqualification, he must also show that the alleged bias stems from an extrajudicial source and
"provide facts sufficient to establish that a reasonable man, knowing all the circumstances involved,
would harbor doubts as to the judge's impartiality." Owens, 202 S.W.3d at 278.