IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1230-04





ARTHUR GARCIA SANCHEZ, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


BEXAR COUNTY





 Cochran, J., delivered the opinion of the Court, in which Keller, P.J.,
Price, Womack, Keasler and Holcomb, JJ., joined. Johnson, J., concurred in
the result. Womack, J., filed a concurring opinion in which Keller, P.J., joined. 
Meyers and Hervey, JJ., are not participating.


O P I N I O N 



 We granted appellant's sole question for review to decide "[w]hat is the appropriate
test for harm when the State is allowed to improperly commit jurors to a set of facts?" We
hold that the proper test for harm is that set out in Rule 44.2(b) of the Texas Rules of
Appellate Procedure, (1) and that reviewing courts should use an appropriately tailored set of
factors to determine whether the defendant's substantial rights have been affected. Because
the court of appeals did not expressly rely upon Rule 44.2(b) or have the benefit of a full set
of factors when it determined that appellant was not harmed by the State's purportedly
improper commitment questions, (2) we remand this case to that court for reconsideration.

I.


 Appellant was charged with driving while intoxicated. During voir dire, the State,
anticipating that the evidence at trial would show that appellant suffered physical disabilities
from polio, asked the jury panel the following questions:

 There may be some evidence in the case, you may hear some evidence
about physical disability. And my question is: will anyone here who is
sensitive or just thinks that their thinking process lends them to feel the need
to be more protective of people with physical disabilities? Is there anyone here
who thinks they may have a hard time reaching a verdict based on the fact that
there may be evidence of a physical disability?


Appellant objected that the prosecutor was attempting to commit the veniremen, and the trial
court overruled his objection. The prosecutor then continued:
 Assuming that you have evidence beyond a reasonable doubt that a
person's lost the normal use of their physical faculties, if you're selected as a
juror --mental faculties--do you think you would have a bias in favor of or give
more benefit to a person who was physically disabled? Do you think you
would? Does anybody feel like they might do this or that they would do that? 
Anybody in the first row?


Appellant again objected and the trial court again overruled his objection. The only
venireman who responded to this questioning was Ms. Nichols who said, "Not unless that
there was an establishment that the disability had something to do with what led others to
believe." Ms. Nichols was juror number twenty; neither side used a peremptory strike
against her because the six-member jury was complete before reaching her number.

 The State's evidence showed that a police officer stopped appellant, who was driving
a green Volvo on Interstate 35 in San Antonio at 1:00 a.m., because he had a hard time
staying in a single lane of traffic. The officer formed the opinion that appellant was
intoxicated because of his alcohol breath, his bloodshot eyes, his slurred speech, his
demeanor, and his inability to recite the alphabet correctly. According to the officer,
appellant said that he is "a drunk." The evidence showed that appellant had braces on his
legs and used a cane for support as a result of polio. The officer did not ask appellant to
perform any physical field sobriety tests because he noted appellant was disabled and "you
need to be fair with each individual for his capability; if he has a handicap, naturally you
can't do [physical field sobriety tests]." Appellant did not present any evidence. Based on
the State's evidence, the jury convicted appellant of driving while intoxicated, and the trial
judge assessed punishment at 120 days in jail probated for one year. 

 On appeal, appellant claimed, inter alia, that the trial court erred when it overruled 
appellant's objections to the prosecutor's alleged juror commitment questions. The court of
appeals declined to address the question of whether the prosecutor's questions were, in fact,
improper commitment questions. Instead, it stated

 Because [appellant] was not harmed by the trial court's ruling, however,
we need not address this issue. A defendant is harmed only if (1) he exhausts
all of his peremptory challenges, (2) he requests more challenges, (3) his
request is denied, and (4) he identifies an objectionable person seated on the
jury on whom he would have exercised a peremptory challenge. Here, the only
venire member who responded to the prosecutor's questions did not serve on
the jury. Accordingly, [appellant] was not harmed by the trial court's ruling. (3)


The court of appeals affirmed the trial court's judgment.


 II.


 There are three possible purposes for the voir dire examination of veniremen. The
first purpose is to elicit information which would establish a basis for a challenge for cause
because the venireman is legally disqualified from serving or is biased or prejudiced for or
against one of the parties or some aspect of the relevant law. (4) This function furthers the
defendant's constitutional right to (and society's interest in) an "impartial" jury. (5) The
second purpose is said to facilitate the intelligent use of peremptory challenges which may
be "exercised without a reason stated, without inquiry and without being subject to the
court's control." (6) This function may further both the defendant's and prosecution's statutory
right to make peremptory challenges. (7) And the third purpose-albeit not necessarily a legally
legitimate one-is to indoctrinate the jurors on the party's theory of the case and to establish
rapport with the prospective jury members. This is of important practical interest to both the
State and the defendant, (8) but it has neither a constitutional nor a statutory basis. Voir dire
for this purpose is entirely within the trial judge's discretion, and he may permit or prohibit
it as he deems appropriate.

 The Texas Supreme Court has stated that the scope of a permissible voir dire
examination is necessarily broad to enable litigants to discover any bias or prejudice so that
they may make either challenges for cause or peremptory challenges. (9) However, in criminal
cases, questions that are not intended to discover bias against the law or prejudice for or
against the defendant, but rather seek only to determine how jurors would respond to the
anticipated evidence and commit them to a specific verdict based on that evidence, are not
proper. (10) 

 The defendant has a constitutional right to a trial "by an impartial jury." (11) Thus, the
purpose for prohibiting improper commitment questions by either the State or the defendant
is to ensure that the jury will listen to the evidence with an open mind-a mind that is
impartial and without bias or prejudice-and render a verdict based upon that evidence. 
Commitment questions require a venireman to promise that he will base his verdict or course
of action on some specific set of facts before he has heard any evidence, much less all of the
evidence in its proper context. It is this prejudgment of the value and importance of certain
evidence that is the evil to be avoided unless the law requires such a commitment. 

 As we explained in Standefer v. State, (12) commitment questions are improper (a) when
the law does not require the commitment, such that a juror would not be disqualified for
cause by being influenced by a particular fact or by having a particular attitude or opinion, (13)
or (b) even if the question meets the challenge for cause requirement, if it also includes facts
in addition to those necessary to establish a challenge for cause. (14) An improper commitment
question attempts to create a bias or prejudice in the venireman before he has heard the
evidence, whereas a proper voir dire question attempts to discover a venireman's preexisting
bias or prejudice.

 III.


 In this case, the court of appeals never addressed whether the questions to which
appellant objected were, in fact, improper commitment questions. (15) Instead, it moved straight
to the issue of harm. Appellant argues that the court of appeals erred in failing to use the
harmless-error analysis set out in Rule 44.2(b) of the Texas Rules of Appellate Procedure. (16) 
We agree. The court of appeals relied exclusively upon Anson v. State, (17) which held that,
when a trial court erroneously prohibits a defendant's proper voir dire questioning or
erroneously denies a defendant's challenge for cause, reviewing courts should apply a four-prong test for harm. That test, as set out by the court of appeals, is that a defendant is harmed
"only if (1) he exhausts all of his peremptory challenges, (2) he requests more challenges, (3)
his request is denied, and (4) he identifies an objectionable person seated on the jury on
whom he would have exercised a peremptory challenge." (18) 

 Although the Anson test may assist in deciding whether error in the State's improper
commitment questioning of an entire jury panel was harmless, it is not focused directly upon
the evil to be avoided: a biased jury which has prejudged the law or facts. The problem with
an Anson analysis in this context is that additional peremptory strikes would not necessarily
cure Standefer error if improper commitment questions were addressed to the entire venire. 
For example, appellant argues that, in this case, "[t]he State committed the entire panel to
follow bad law." Were that shown to be true, then every juror who sat on the jury might, at
least in theory, be biased against the defendant. Providing an extra peremptory strike clearly
would not cure the problem. Further, argues appellant, "asking counsel to point out
objectionable jurors is futile, because all of the jurors who agreed to the prosecutor's
improper commitment of the law were left on the panel to serve as potential jurors." Thus,
reliance solely upon the Anson test will not suffice when purportedly improper commitment
questions are posed to the jury panel as a whole. Therefore, we must turn to the rule set out
in Tex. R. App. P. 44.2(b).

 Under Rule 44.2(b), reviewing courts should assess the potential harm of the State's
improper commitment questioning by focusing upon whether a biased juror-one who had
explicitly or implicitly promised to prejudge some aspect of the case because of the State's
improper questioning-actually sat on the jury. The ultimate harm question is: was the
defendant tried by an impartial jury, or, conversely, was the jury or any specific juror
"poisoned" by the State's improper commitment questions on a legal issue or fact that was
important to the determination of the verdict or sentence?

 There is no single, specific rule by which reviewing courts should assess this question
of harm. But factors to consider in determining whether a trial court's error in permitting the
State to ask improper commitment questions to an entire jury panel over the defendant's
objection is harmful might include:


 whether the questions were unambiguously improper and attempted to commit
one or more veniremen to a specific verdict or course of action; (19)

 how many, if any, veniremen agreed to commit themselves to a specific verdict
or course of action if the State produced certain evidence; (20)

 whether the veniremen who agreed to commit themselves actually served on
the jury;

 whether the defendant used peremptory challenges to eliminate any or all of
those veniremen who had committed themselves;

 whether the defendant exhausted all of his peremptory challenges upon those
veniremen and requested additional peremptory challenges to compensate for
their use on improperly committed veniremen; 

 whether the defendant timely asserted that a named objectionable veniremen
actually served on the jury because he had to waste strikes on the improperly
committed jurors; (21) and

 whether there is a reasonable likelihood that the jury's verdict or course of
action in reaching a verdict or sentence was substantially affected by the
State's improper commitment questioning during voir dire. (22)
 



This is not, of course, an exhaustive or exclusive list of factors that reviewing courts might
consider. Depending upon the particular circumstances, a reviewing court might use
additional or entirely different factors to assess the ultimate question of harm: was the
defendant tried by a juror that had prejudged him or some aspect of his case because the State
had improperly committed one or more veniremen to a verdict or course of action before
hearing any evidence?

 Because the court of appeals has not had the opportunity to conduct a harmless error
analysis under the standard and factors we announce today, we vacate its judgment and
remand this case to the court of appeals for further proceedings.


Cochran, J.

Delivered: June 22, 2005

Publish
1. Tex. R. App. P. 44.2(b) (any nonconstitutional "error, defect, irregularity, or variance
that does not affect substantial rights must be disregarded").
2. Sanchez v. State, 04-02-00624-CR, 2004 Tex. App. LEXIS 4001 (Tex. App. - San
Antonio 2004).
3. Sanchez, slip op. at 3, 2004 Tex. App. LEXIS 4001 at *2-3 (citation omitted).
4. Tex. Code Crim. Proc. art. 35.16; see Sadler v. State, 977 S.W.2d 140, 142 & n.3
(Tex. Crim. App. 1998) (noting that both defendant and State may challenge for cause any juror
who has a bias or prejudice against the law that either party is entitled to rely upon; stating that
"[b]ias against the law is refusal to consider or apply the relevant law. It exists when a
venireperson's beliefs or opinions 'would prevent or substantially impair the performance of his
duties as a juror in accordance with his instructions and oath'"); Smith v. State, 907 S.W.2d 522,
529 (Tex. Crim. App. 1995) (a prospective juror with bias or prejudice against the parties in the
case must be excused for cause).
5. See Morgan v. Illinois, 504 U.S. 719, 727 (1992) (stating that "'the right to jury trial
guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors'" and
that "if a jury is to be provided the defendant, regardless of whether the Sixth Amendment
requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth
Amendment") (citing Turner v. Louisiana, 379 U.S. 466, 471-42 (1965) and quoting Irvin v.
Dowd, 366 U.S. 717, 721-22 (1961)).
6. Swain v. Alabama, 380 U.S. 202, 220 (1965) (noting that "[w]hile challenges for cause
permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of
partiality, the peremptory permits rejection for a real or imagined partiality that is less easily
designated or demonstrable. It is often exercised upon the 'sudden impressions and
unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another,' 
upon a juror's 'habits and associations,' or upon the feeling that 'the bare questioning [a juror's]
indifference may sometimes provoke a resentment,'") (citations omitted).
7. Tex. Code Crim. Proc. art. 35.14; see Cannady v. State, 11 S.W.3d 205, 210 (Tex.
Crim. App. 2000) ("asking questions on voir dire helps a party to intelligently exercise his
peremptory challenges. Likewise, not being allowed to ask proper questions hampers that
exercise"); Barnes v. State, 876 S.W.2d 316, 325 (Tex. Crim. App. 1994) ("Article 35.14
provides a vehicle with which to exclude potential jurors that an advocate believes are prejudiced
against his cause. ... Subject to the constraints of Article 35.261, we have held that party need not
assign a reason for exercising his peremptory strikes").
8. See, e.g., 5 William Dorsaneo, Texas Litigation Guide §120.02[1] (2005). 
Professor Dorsaneo notes:

 Counsel should not underestimate the importance of appearance and
conduct during the voir dire, and must endeavor to create a favorable first
impression. The task at hand is more than the mere gleaning of information
helpful to counsel in exercising challenges against unwanted jurors. Added
purposes of voir dire include setting the jurors at ease, creating a degree of rapport
with them, and stating the general nature of the case, all in such a way that the
jurors will be on counsel's side from the beginning.

Id.
9. See, e.g., Babcock v. Northwest Memorial Hosp., 767 S.W.2d 705, 709 (Tex. 1989)("A
broad latitude should be allowed to a litigant during voir dire examination. This will enable the
litigant to discover any bias or prejudice by the potential jurors so that peremptory challenges
may be intelligently exercised").
10. Atkins v. State, 951 S.W.2d 787, 789 (Tex. Crim. App. 1997); Allridge v. State, 850
S.W.2d 471, 480 (Tex. Crim. App. 1991) ("an attorney cannot attempt to bind or commit a
prospective juror to a verdict based on a hypothetical set of facts").
11. U.S. Const. amend. VI ("
In all criminal prosecutions, the accused shall enjoy the right
to a . . . trial, by an impartial jury of the State and district wherein the crime shall have been
committed"); Tex. Const. art. 1, § 10 ("In all criminal prosecutions the accused shall have a
speedy public trial by an impartial jury"). It has long been the policy of American law

 to afford each and every person who may have a cause for trial in our courts, a fair
and impartial trial. This can only be done by having the mind of each juror who
sits to pass judgment upon the life, liberty or rights of a suitor entirely free from
bias or prejudice. In order to determine whether the person who may be called as
a juror possesses the necessary qualifications, whether he has prejudged the case,
whether his mind is free from prejudice or bias, the suitor has the right to ask him
questions, the answer to which may tend to show he may be challenged for cause,
or disclose a state of facts from which the suitor may see proper to reject such
juror peremptorily.

Lavin v. People, 69 Ill. 303, 304-05 (1873).
12. 59 S.W.3d 177 (Tex. Crim. App. 2001). 
13. Standefer, 59 S.W.3d at 181 ("for a commitment question to be proper, one of the
possible answers to that question must give rise to a challenge for cause").
14. Id. at 182.
15. The State argues that the question of what harm standard should be applied in this case
is irrelevant because the questions asked by the prosecution were not improper commitment
questions. It notes that questions of error in the voir dire context should be addressed before
harm and cites Tong v. State, 25 S.W.3d 707, 718 (Tex. Crim. App. 2000). Be that as it may, the
only question before us at this time is "what is the appropriate test for harm when the State is
allowed to improperly commit jurors to a set of facts?"
16. See Rich v. State, 160 S.W.3d 575, ___, 2005 Tex. Crim. App. LEXIS 566 * 3-4 (Tex.
Crim. App. 2005) (stating that Rule 44.2(b), not Anson test, is applicable when voir dire is
conducted in a group setting and defendant is prohibited from asking a proper question of the
panel); see also Thompson v. State, 95 S.W.3d 537, 542 (Tex. App. - Houston [1st Dist.] 2002,
no pet.) (Applying rule 44.2(b) in deciding that error in permitting State to pose improper
hypothetical to jury panel during voir dire was harmless).
17. 959 S.W.2d 203 (Tex. Crim. App. 1997).
18. Sanchez, slip op. at 2; 2004 Tex. App. LEXIS 4001 at *2-3.
19. In some instances, it is difficult for appellate courts, much less trial judges, attorneys, or
veniremen to determine whether a specific question is or is not an improper commitment
question. If the question is phrased ambiguously and could be interpreted either way, the trial
judge does not abuse his discretion in either permitting or prohibiting the specific question. 
20. Just as the mere asking of an improper question at trial is rarely reversible error, see
Brown v. State, 692 S.W.2d 497, 501 (Tex. Crim. App. 1985), the mere asking of an improper
commitment question during jury selection is rarely reversible error. 
21. These Anson factors are relevant in assessing whether the defendant thought any
veniremen had actually been improperly committed in a manner that prejudiced him, took
appropriate measures to eliminate those biased veniremen from the jury, but was unable to strike
all of them because he was denied sufficient peremptory strikes to do so.
22. This is the same harmless error test set out in Rich, 160 S.W.3d at ___, 2005 Tex.
Crim. App. LEXIS 566 at * 6. There we stated that the appellate court should consider everything in the record, including any
testimony or physical evidence admitted for the jury's consideration, the nature of
the evidence supporting the verdict, the character of the alleged error and how it
might be considered in connection with other evidence in the case, the jury
instructions, the State's theory and any defensive theories, closing arguments, voir
dire, and whether the State emphasized the error. We believe these same general
factors are relevant considerations in determining the harm from being denied a
proper question to the venire.

Id.