IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00061-CR

 

Ronnie Joe Daniel,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 85th District
Court

Brazos County, Texas

Trial Court No. 07-02135-CRF-85

 



MEMORANDUM  Opinion










 

            Ronnie Joe Daniel was convicted of the
offense of Sexual Assault of a Child.  Tex.
Penal Code Ann. § 22.011 (West Pamp. 2010).  After the jury found an
enhancement paragraph of a prior aggravated sexual assault conviction to be
true, Daniel was sentenced to life in prison.  Because a question asked of the
prospective jury panel was not a commitment question and because Daniel’s
complaint about the exclusion of evidence was not preserved for appeal, the
trial court’s judgment is affirmed.




Background

            Around Christmas of 2005,
Daniel and S.M. met and started a relationship.  In November of 2006, the two
had sex.  S.M. was 16 years old at the time and Daniel was 37 years old.  S.M
became pregnant and had a baby in August of 2007.  S.M. was 17 at the time the
baby was born.  DNA testing confirmed that Daniel was the father of the baby.

Commitment
Question

            In his first issue, Daniel
asserts that the trial court erred in permitting the State to ask an improper
commitment question during jury selection.[1] 
The question at issue here was introduced by an interrupted series of
statements.

State:  Another scenario:  40-year-old
man, 16-year-old girl; they’ve known each other for years; find themselves
together alone and one thing just leads to another.

 

Defense:  Judge, again, I would object
at this point.  This is an improper commitment question under Standefer.

 

State:  I haven’t asked a question.

 

Court:  Go ahead.  Ask the question. 
Then if you have an objection, let me know what it is.

 

State:  And let’s say that the man knows
the girl just got her driver’s license.  Now, one thing lead to another [-]
they had sex.  Would that be a sexual assault of a child?

 

Defense:  At this point I object under Standefer. 
That’s an improper commitment question.

 

Court:  Okay.  I’ll overrule the
objection.  You may ask that question.

 

State:  That second scenario, wouldn’t
that be a sexual assault of a child?  

 

Jury Panel:  Yes.

 

The first step in our review is to
determine whether this question was a commitment question.  Daniel argues that
it was.  Commitment questions are those questions that commit a prospective
juror to resolve, or to refrain from resolving, an issue a certain way after
learning a particular fact.  Standefer v. State, 59 S.W.3d 177, 179
(Tex. Crim. App. 2001).  The purpose for prohibiting improper commitment
questions by either the State or the defendant is to ensure that the jury will
listen to the evidence with an open mind-a mind that is impartial and without
bias or prejudice-and render a verdict based upon that evidence.  Sanchez v.
State, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005).  Commitment questions
require a prospective juror to promise that he will base his verdict or course
of action on some specific set of facts before he has heard any evidence, much
less all of the evidence in its proper context.  Id.  It is this
prejudgment of the value and importance of certain evidence that is the evil to
be avoided unless the law requires such a commitment.  Id.  

But not all commitment questions are
improper.  For a commitment question to be proper, one of the possible answers
to that question must give rise to a valid challenge for cause and must contain
only those facts necessary to test whether a prospective juror is challengeable
for cause.  Standefer, 59 S.W.3d at 182.  An improper commitment
question attempts to create a bias or prejudice in the prospective juror before
he has heard the evidence, whereas a proper voir dire question attempts to
discover a prospective juror's preexisting bias or prejudice.  Sanchez v.
State, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005)

When comparing the question in this case
to questions that have been held to be commitment questions, we do not consider
it to be a commitment question.  It does not ask the panel to resolve or
refrain from resolving an issue in the case on the basis of one or more facts
contained in the question.  The State was not asking the panel if they could
convict based on certain facts, like the questions in Atkins or Standefer. 
See Atkins v. State, 951 S.W.2d 787, 789 (Tex. Crim. App. 1997)
("If the evidence, in a hypothetical case, showed that a person was
arrested and they had a crack pipe in their pocket, and they had a residue
amount in it, and it could be measured, and it could be seen, is there anyone
who could not convict a person, based on that."); Standefer v. State,
59 S.W.3d 177, 179 (Tex. Crim. App. 2001) ("Would you presume someone
guilty if he or she refused a breath test on their refusal alone?").  What
the State was doing here is more akin to what Courts have found not to be
commitment questions.  See Halprin v. State, 170 S.W.3d 111 (Tex.
Crim. App. 2005); Berkley v. State, No. AP-74,336, 2005 Tex. Crim. App.
Unpub. LEXIS 394 (Tex. Crim. App. April 6, 2005) (not designated for
publication); Zuniga v. State, Nos. 14-06-00405-CR, 14-06-00406-CR, 2007
Tex. App. LEXIS 4552 (Tex. App.—Houston [14th Dist.] June 12, 2007, pet. ref’d)
(mem. op.).

            In Halprin, the
appellant complained that many hypotheticals posed by the State to illustrate
the variations of the offense of murder were improper commitment questions. 
The Court of Criminal Appeals held that, for the issues that were preserved,
the hypotheticals were not commitment questions because they did not attempt to
bind the prospective juror to resolve or refrain from resolving an issue, in
that case the minimum punishment for an intentional murder, on the basis of one
or more facts contained in the questions.  Halprin, 170 S.W.3d at
118-121.

            In Berkley, the
appellant complained about hypothetical scenarios which the state posed to
prospective jurors involving death as a result of mercy killing, domestic
violence, and bullying. The appellant claimed both at trial and on appeal that
the hypotheticals improperly committed and contracted with prospective
jurors.   The appellant complained that the State followed up in each
hypothetical with the broad question whether the prospective juror could
conceive a scenario in which he or she could consider probation which, in
essence, asked the prospective jurors whether they could consider probation for
a mercy killing or when the victim was of an “unpalatable character."  The
Court of Criminal Appeals held:

It appears to us that, in using those
hypotheticals, the prosecutor was not asking prospective jurors to resolve, or
to refrain from resolving, any issue in any certain way after learning of a
particular fact, and thus was not asking a commitment question, prohibited or
otherwise. Rather, the prosecutor was presenting possible scenarios to
facilitate inquiry into the prospective juror's views regarding punishment.
Because the challenged inquiries were not improper commitment questions, we
conclude that the trial court did not err in overruling appellant's objections
thereto.

 

Berkley, 2005 Tex. Crim. App. Unpub. LEXIS 394
at *4-5.

In Zuniga, the trial court began
the voir dire of the prospective jurors.  Because the defendant elected to have
the jury assess his punishment, the trial court summarized the range of
punishment for the defendant’s offenses.  The trial court also gave differing
fact scenarios of the same offense to illustrate to the panel that under both
scenarios, the law had been violated but that the jury might consider both
scenarios differently to determine the appropriate punishment.  When the trial
court then asked whether the members of the panel could consider the full range
of punishment, the defendant objected, stating that the court was qualifying
the panel on a specific set of facts and that the scenarios made it easier for
the panel to commit to considering probation in a proper case.  The objection
was overruled.  On appeal, the appellant complained that the trial court
improperly committed the panel to specific fact scenarios which tended to bias
or influence the jury toward a particular type of crime related to the offense
with which he was charged.  The appellate court held that “[b]ecause the trial
judge did not attempt to bind the venire members to resolve or refrain from
resolving an issue on the basis of one or more of the facts contained in her
examples, her questioning of the panel was proper.”  Zuniga, 2007 Tex.
App. LEXIS 4552 at *6.  

Prior to the question at issue in this
case, the State had been educating the prospective jury panel on the law of
sexual assault of a child.  At least one panel member was having difficulty
following the law where the victim was 16 years old.  Another did not know
whether she would consider the facts of a less egregious sexual assault in
punishment or in guilt/innocence.  To further assist the prospective jurors,
the State gave them different fact scenarios to illustrate the law.  After one
fact scenario, the State asked a similar question, “Has a sexual assault as the
law’s [sic] written been committed,” without objection.  Then, after the second
scenario detailed above and objection, the State went on to explain, 

What I’m trying to illustrate by the two
different examples are you’re going to have different fact scenarios and we’ve
talked about some, but you’re going to have different fact scenarios and don’t
know what the facts are.  But you might look differently at that second
scenario than the first scenario, you might treat them differently in
punishment.  But they’re both, under the law, sexual assault of a child as it’s
written.  Does everyone see how those facts fit in with the law as it’s
written?

 

Further, the voir dire record reflects
that the State explained several times to the prospective jury panel that they
did not, at that time, know the facts of the case.

            After reviewing this record
and in light of the relevant case law, we find that the question asked by the
State is not a commitment question.  Because it was not a commitment question,
the trial court did not err in overruling Daniel’s objection.  

Daniel’s first issue is overruled.

Exclusion of
Evidence[2]

            In his second issue, Daniel
contends the trial court erred in excluding evidence of the presence of an
additional witness during the offense.  The crux of Daniel’s complaint on
appeal is that the exclusion of this evidence deprived him of the ability to
present a potential fact witness.  The State asserts that Daniel has not
preserved this issue for review.  We agree with the State.

At trial, Daniel wanted to ask S.M.
about whether her two-year-old son was present during all encounters with
Daniel, including the time of the sexual assault.  The State argued that
evidence of another child by S.M. was inadmissible under Rule 412 of the Texas
Rules of Evidence because it was necessarily evidence of S.M.’s prior sexual
activity.  Daniel claimed in response that the child was a fact witness and
whose presence was a means to attack S.M.’s credibility.  At a hearing outside
the presence of the jury, Daniel questioned S.M. about the presence of her
child during her encounters with Daniel.  Daniel did not, however, present the
child for questioning and did not present any kind of summary as to what the
child’s testimony, or even what the relevance of the child’s testimony, would
be.  After the hearing, the trial court agreed with the State and excluded the
evidence.

In order to preserve error regarding a
trial court's decision to exclude evidence, the complaining party must comply
with Rule of Evidence 103 by making an "offer of proof" which sets
forth the substance of the proffered evidence.  Tex. R. Evid. 103(a)(2); Mays v. State, 285 S.W.3d
884, 889 (Tex. Crim. App. 2009).  The offer of proof may consist of a concise
statement by counsel, or it may be in question-and-answer form.  Mays,
285 S.W.3d at 889; Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App.
1998).  If in the form of a statement, the proffer "must include a
reasonably specific summary of the evidence offered and must state the
relevance of the evidence unless the relevance is apparent, so that the court
can determine whether the evidence is relevant and admissible."  Mays,
285 S.W.3d at 890 (quoting Warner, 969 S.W.2d at 2).  The primary
purpose of an offer of proof is to enable an appellate court to determine
whether the exclusion was erroneous and harmful.  Mays, 285 S.W.3d at
890 (citing Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, 1
Texas Practice - Guide to the Texas Rules of Evidence: Civil and Criminal §
103.3 (1993)).

On appeal, Daniel is trying to argue
that because he was prevented from obtaining testimony from S.M. about the
presence of S.M.’s child when S.M. was sexually assaulted, the extent of his
cross-examination of S.M. was improperly limited.  He argues further that this
limitation on cross-examination had the effect of Daniel being unable to
impeach S.M.’s credibility with the testimony of a third party witness present
during the assault.  We note that the presence of S.M.’s child, as such, during
the assault is uncontroverted.  The mere presence of S.M.’s child was not,
however, relevant to the commission of the assault.  If S.M.’s child had the
capacity to testify, which we assume absent evidence to the contrary, Broussard
v. State, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995); Rodriguez v. State,
___ S.W.3d ___, 2011 Tex. App. LEXIS 834 (Tex. App.—Waco Feb. 2, 2011, no pet. h.),
the nature of the child’s testimony was never presented in any form.  Daniel
never tried to call S.M.’s child as a witness.  To the extent Daniel wanted to
establish that the third person present during the assault was S.M.’s child,
that issue is irrelevant.  But to the extent that Daniel complains he was
deprived of the child’s testimony, that issue was not preserved.

Without an offer of proof as to the
substance of the child’s testimony, we cannot determine from this record why
the child would be a fact witness or why the child’s presence at the time of
the assault would be a proper means to attack S.M.’s credibility.  Accordingly,
Daniel did not preserve his complaint for appeal, and his second issue is
overruled.[3]

Conclusion

            Having overruled both issues
presented on appeal, we affirm the judgment of the trial court.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Davis, and

            Justice
Scoggins

Affirmed

Opinion
delivered and filed March 16, 2011

Do
not publish 

[CRPM]









[1]
Daniel objected to another question as a commitment question but he does not
complain about that question on appeal.  





[2]
The issue is multifarious and could be overruled on that basis alone.  Mays
v. State, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010); Wood v. State,
18 S.W.3d 642, 649 n.6 (Tex. Crim. App. 2000).  Further, primarily due to the
multifarious nature thereof, it is difficult for us to align the purported
evidence that was not admitted with an offer of that evidence, the related
objection or basis for exclusion of the evidence, and the trial court’s ruling
excluding the evidence.  We will, however, address the fundamental complaints
as we understand them.





[3]
Further, we cannot conclude on this record that the trial court abused its
discretion by excluding S.M.’s testimony about the presence of her child during
her encounters with Daniel.