

# IN THE
# TENTH COURT OF APPEALS

### No. 10-10-00061-CR

**RONNIE JOE DANIEL,**

                                                                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                **Appellee**

**From the 85th District Court
Brazos County, Texas
Trial Court No. 07-02135-CRF-85**

## MEMORANDUM  OPINION

Ronnie Joe Daniel was convicted of the offense of Sexual Assault of a Child.  TEX. PENAL CODE ANN. § 22.011 (West Pamp. 2010).  After the jury found an enhancement paragraph of a prior aggravated sexual assault conviction to be true, Daniel was sentenced to life in prison.  Because a question asked of the prospective jury panel was not a commitment question and because Daniel's complaint about the exclusion of evidence was not preserved for appeal, the trial court's judgment is affirmed.

## BACKGROUND

Around Christmas of 2005, Daniel and S.M. met and started a relationship. In November of 2006, the two had sex. S.M. was 16 years old at the time and Daniel was 37 years old. S.M became pregnant and had a baby in August of 2007. S.M. was 17 at the time the baby was born. DNA testing confirmed that Daniel was the father of the baby.

## COMMITMENT QUESTION

In his first issue, Daniel asserts that the trial court erred in permitting the State to ask an improper commitment question during jury selection.[1] The question at issue here was introduced by an interrupted series of statements.

> State: Another scenario: 40-year-old man, 16-year-old girl; they've known each other for years; find themselves together alone and one thing just leads to another.
>
> Defense: Judge, again, I would object at this point. This is an improper commitment question under *Standefer*.
>
> State: I haven't asked a question.
>
> Court: Go ahead. Ask the question. Then if you have an objection, let me know what it is.
>
> State: And let's say that the man knows the girl just got her driver's license. Now, one thing lead to another [-] they had sex. Would that be a sexual assault of a child?
>
> Defense: At this point I object under *Standefer*. That's an improper commitment question.
>
> Court: Okay. I'll overrule the objection. You may ask that question.

---

[1] Daniel objected to another question as a commitment question but he does not complain about that question on appeal.

State: That second scenario, wouldn't that be a sexual assault of a child?

Jury Panel: Yes.

The first step in our review is to determine whether this question was a commitment question. Daniel argues that it was. Commitment questions are those questions that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). The purpose for prohibiting improper commitment questions by either the State or the defendant is to ensure that the jury will listen to the evidence with an open mind-a mind that is impartial and without bias or prejudice-and render a verdict based upon that evidence. *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005). Commitment questions require a prospective juror to promise that he will base his verdict or course of action on some specific set of facts before he has heard any evidence, much less all of the evidence in its proper context. *Id*. It is this prejudgment of the value and importance of certain evidence that is the evil to be avoided unless the law requires such a commitment. *Id*.

But not all commitment questions are improper. For a commitment question to be proper, one of the possible answers to that question must give rise to a valid challenge for cause and must contain only those facts necessary to test whether a prospective juror is challengeable for cause. *Standefer*, 59 S.W.3d at 182. An improper commitment question attempts to create a bias or prejudice in the prospective juror before he has heard the evidence, whereas a proper voir dire question attempts to

discover a prospective juror's preexisting bias or prejudice. *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005)

When comparing the question in this case to questions that have been held to be commitment questions, we do not consider it to be a commitment question. It does not ask the panel to resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question. The State was not asking the panel if they could convict based on certain facts, like the questions in *Atkins* or *Standefer*. *See Atkins v. State*, 951 S.W.2d 787, 789 (Tex. Crim. App. 1997) ("If the evidence, in a hypothetical case, showed that a person was arrested and they had a crack pipe in their pocket, and they had a residue amount in it, and it could be measured, and it could be seen, is there anyone who could not convict a person, based on that."); *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001) ("Would you presume someone guilty if he or she refused a breath test on their refusal alone?"). What the State was doing here is more akin to what Courts have found not to be commitment questions. *See Halprin v. State*, 170 S.W.3d 111 (Tex. Crim. App. 2005); *Berkley v. State*, No. AP-74,336, 2005 Tex. Crim. App. Unpub. LEXIS 394 (Tex. Crim. App. April 6, 2005) (not designated for publication); *Zuniga v. State*, Nos. 14-06-00405-CR, 14-06-00406-CR, 2007 Tex. App. LEXIS 4552 (Tex. App.—Houston [14th Dist.] June 12, 2007, pet. ref'd) (mem. op.).

In *Halprin*, the appellant complained that many hypotheticals posed by the State to illustrate the variations of the offense of murder were improper commitment questions. The Court of Criminal Appeals held that, for the issues that were preserved, the hypotheticals were not commitment questions because they did not attempt to bind

the prospective juror to resolve or refrain from resolving an issue, in that case the minimum punishment for an intentional murder, on the basis of one or more facts contained in the questions. *Halprin*, 170 S.W.3d at 118-121.

In *Berkley*, the appellant complained about hypothetical scenarios which the state posed to prospective jurors involving death as a result of mercy killing, domestic violence, and bullying. The appellant claimed both at trial and on appeal that the hypotheticals improperly committed and contracted with prospective jurors. The appellant complained that the State followed up in each hypothetical with the broad question whether the prospective juror could conceive a scenario in which he or she could consider probation which, in essence, asked the prospective jurors whether they could consider probation for a mercy killing or when the victim was of an "unpalatable character." The Court of Criminal Appeals held:

> It appears to us that, in using those hypotheticals, the prosecutor was not asking prospective jurors to resolve, or to refrain from resolving, any issue in any certain way after learning of a particular fact, and thus was not asking a commitment question, prohibited or otherwise. Rather, the prosecutor was presenting possible scenarios to facilitate inquiry into the prospective juror's views regarding punishment. Because the challenged inquiries were not improper commitment questions, we conclude that the trial court did not err in overruling appellant's objections thereto.

*Berkley*, 2005 Tex. Crim. App. Unpub. LEXIS 394 at *4-5.

In *Zuniga*, the trial court began the voir dire of the prospective jurors. Because the defendant elected to have the jury assess his punishment, the trial court summarized the range of punishment for the defendant's offenses. The trial court also gave differing fact scenarios of the same offense to illustrate to the panel that under

both scenarios, the law had been violated but that the jury might consider both scenarios differently to determine the appropriate punishment. When the trial court then asked whether the members of the panel could consider the full range of punishment, the defendant objected, stating that the court was qualifying the panel on a specific set of facts and that the scenarios made it easier for the panel to commit to considering probation in a proper case. The objection was overruled. On appeal, the appellant complained that the trial court improperly committed the panel to specific fact scenarios which tended to bias or influence the jury toward a particular type of crime related to the offense with which he was charged. The appellate court held that "[b]ecause the trial judge did not attempt to bind the venire members to resolve or refrain from resolving an issue on the basis of one or more of the facts contained in her examples, her questioning of the panel was proper." *Zuniga*, 2007 Tex. App. LEXIS 4552 at *6.

Prior to the question at issue in this case, the State had been educating the prospective jury panel on the law of sexual assault of a child. At least one panel member was having difficulty following the law where the victim was 16 years old. Another did not know whether she would consider the facts of a less egregious sexual assault in punishment or in guilt/innocence. To further assist the prospective jurors, the State gave them different fact scenarios to illustrate the law. After one fact scenario, the State asked a similar question, "Has a sexual assault as the law's [sic] written been committed," without objection. Then, after the second scenario detailed above and objection, the State went on to explain,

What I'm trying to illustrate by the two different examples are you're going to have different fact scenarios and we've talked about some, but you're going to have different fact scenarios and don't know what the facts are. But you might look differently at that second scenario than the first scenario, you might treat them differently in punishment. But they're both, under the law, sexual assault of a child as it's written. Does everyone see how those facts fit in with the law as it's written?

Further, the voir dire record reflects that the State explained several times to the prospective jury panel that they did not, at that time, know the facts of the case.

After reviewing this record and in light of the relevant case law, we find that the question asked by the State is not a commitment question. Because it was not a commitment question, the trial court did not err in overruling Daniel's objection.

Daniel's first issue is overruled.

### EXCLUSION OF EVIDENCE[2]

In his second issue, Daniel contends the trial court erred in excluding evidence of the presence of an additional witness during the offense. The crux of Daniel's complaint on appeal is that the exclusion of this evidence deprived him of the ability to present a potential fact witness. The State asserts that Daniel has not preserved this issue for review. We agree with the State.

At trial, Daniel wanted to ask S.M. about whether her two-year-old son was present during all encounters with Daniel, including the time of the sexual assault. The State argued that evidence of another child by S.M. was inadmissible under Rule 412 of

---

[2] The issue is multifarious and could be overruled on that basis alone. *Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010); *Wood v. State*, 18 S.W.3d 642, 649 n.6 (Tex. Crim. App. 2000). Further, primarily due to the multifarious nature thereof, it is difficult for us to align the purported evidence that was not admitted with an offer of that evidence, the related objection or basis for exclusion of the evidence, and the trial court's ruling excluding the evidence. We will, however, address the fundamental complaints as we understand them.

the Texas Rules of Evidence because it was necessarily evidence of S.M.'s prior sexual activity. Daniel claimed in response that the child was a fact witness and whose presence was a means to attack S.M.'s credibility. At a hearing outside the presence of the jury, Daniel questioned S.M. about the presence of her child during her encounters with Daniel. Daniel did not, however, present the child for questioning and did not present any kind of summary as to what the child's testimony, or even what the relevance of the child's testimony, would be. After the hearing, the trial court agreed with the State and excluded the evidence.

In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with Rule of Evidence 103 by making an "offer of proof" which sets forth the substance of the proffered evidence. TEX. R. EVID. 103(a)(2); *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). The offer of proof may consist of a concise statement by counsel, or it may be in question-and-answer form. *Mays*, 285 S.W.3d at 889; *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). If in the form of a statement, the proffer "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible." *Mays*, 285 S.W.3d at 890 (quoting *Warner*, 969 S.W.2d at 2). The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. *Mays*, 285 S.W.3d at 890 (citing Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, 1 Texas Practice - Guide to the Texas Rules of Evidence: Civil and Criminal § 103.3 (1993)).

On appeal, Daniel is trying to argue that because he was prevented from obtaining testimony from S.M. about the presence of S.M.'s child when S.M. was sexually assaulted, the extent of his cross-examination of S.M. was improperly limited. He argues further that this limitation on cross-examination had the effect of Daniel being unable to impeach S.M.'s credibility with the testimony of a third party witness present during the assault. We note that the presence of S.M.'s child, as such, during the assault is uncontroverted. The mere presence of S.M.'s child was not, however, relevant to the commission of the assault. If S.M.'s child had the capacity to testify, which we assume absent evidence to the contrary, *Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995); *Rodriguez v. State*, ___ S.W.3d ___, 2011 Tex. App. LEXIS 834 (Tex. App.—Waco Feb. 2, 2011, no pet. h.), the nature of the child's testimony was never presented in any form. Daniel never tried to call S.M.'s child as a witness. To the extent Daniel wanted to establish that the third person present during the assault was S.M.'s child, that issue is irrelevant. But to the extent that Daniel complains he was deprived of the child's testimony, that issue was not preserved.

Without an offer of proof as to the substance of the child's testimony, we cannot determine from this record why the child would be a fact witness or why the child's presence at the time of the assault would be a proper means to attack S.M.'s credibility. Accordingly, Daniel did not preserve his complaint for appeal, and his second issue is overruled.[3]

---

[3] Further, we cannot conclude on this record that the trial court abused its discretion by excluding S.M.'s testimony about the presence of her child during her encounters with Daniel.

**CONCLUSION**

Having overruled both issues presented on appeal, we affirm the judgment of

the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed March 16, 2011
Do not publish
[CRPM]