**Affirmed and Memorandum Opinion filed August 18, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00587-CR

### COLLINS MCCRAY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1536884**

## MEMORANDUM OPINION

In this appeal from a conviction for unlawful possession of a firearm, the sole question presented is whether the trial court committed reversible error when it overruled an objection to an improper commitment question. For the reasons explained below, we find no such error and affirm the trial court's judgment.

# BACKGROUND

An officer heard multiple shots ring out during his nightly patrol of a neighborhood. As the officer drove in the direction of the gunfire, he rounded a street corner and saw a group of people congregating outside. The officer believed that he heard additional shots originating from this group, and that the shots must have been fired into the air because the group was not dispersing.

The officer detained the individuals in the group, which included appellant. The officer did not find a firearm on appellant's person, but there were spent shell casings in his vicinity, and a firearm was discovered in a maroon vehicle that was also close to him. The firearm was in plain view near the center console, directly next to the driver's seat. The maroon vehicle was not registered to appellant, but appellant referred to it as his own, and he expressed concern that the officer was going to tow it.

The officer learned from another witness at the scene that appellant was the individual who had been shooting rounds into the air. The witness was a resident of the neighborhood, and she said that she saw appellant drive up in the maroon vehicle with a passenger. She said that appellant and the passenger exited the vehicle, and that appellant then boasted to a group of men that he had a "new toy," referring to the firearm. The resident said that appellant was not trying to be threatening to anyone when he discharged the firearm. She said that appellant was just showing off.

Because he had a prior felony conviction, appellant was charged with unlawful possession of a firearm. He pleaded not guilty, but he did not testify during his trial. Instead, he called a single defense witness, who testified that appellant had been a passenger in a gray vehicle (not the driver of the maroon vehicle), and that appellant never possessed a firearm. This defense witness also opined that the

2

shooting was caused by someone who had been driving around in a white car. The jury implicitly rejected this testimony when it convicted appellant of the charged offense.

## COMMITMENT QUESTION

During voir dire, the prosecutor asked a series of questions to test the venire panel's understanding of possession. The prosecutor began by asking one venireperson if he had a wallet on his person. The venireperson answer affirmatively, and he agreed with the prosecutor's follow-up notion that he was in possession of both the wallet and everything it contained.

The prosecutor then moved to another venireperson who had a purse, which was presumably on the floor. This venireperson agreed with the prosecutor that she was in possession of the purse, even though she was not actually holding it.

The prosecutor turned to the next venireperson in line, and asked whether she had a television at home. This venireperson agreed with the prosecutor that she was in possession of the television even though it was nowhere near her because she controlled the television by restricting the people allowed into her home.

The prosecutor then began a series of hypotheticals. The prosecutor asked one venireperson to imagine that she had leant her car to another person. The venireperson agreed under this hypothetical that the other person would be in possession of anything he brought into the car, like an umbrella.

The prosecutor then asked another venireperson to imagine that he was driving a car with a passenger, and that the passenger had brought an umbrella with him that was placed in between them both. When the prosecutor asked the venireperson about who possessed the umbrella, defense counsel interjected and requested to approach the bench. Counsel then objected that the prosecutor's

hypothetical was an improper commitment question because it was "getting into the actual facts of the case." The prosecutor reiterated that he was only asking about an umbrella. The trial court remarked that the prosecutor was allowed to ask hypothetical questions about possession. The trial court overruled counsel's objection but admonished the prosecutor to be careful about getting into the facts of the case.

When the voir dire continued, the venireperson answered the hypothetical by opining that only the passenger would be in possession of the umbrella because he owned it. When the prosecutor asked if the driver would also be in possession if the passenger had granted him permission to use it, the venireperson answered that there would be joint possession of the umbrella.

The prosecutor ended the exchange with this summary: "Exactly. So, the point there being we don't have to prove ownership. You don't have to own something in order to possess it. And multiple people can possess the same thing at the same time. Right? If you're married or if you have a wife at home, you're in possession of the TV just the same as she is. So, the things I'm not required to prove for possession are that the defendant owns, used, bought the firearm or that [he] had it on [his] hand or [his] body. Just that [he] possessed it."

Appellant now argues that the prosecutor's hypothetical was an improper commitment question, and that the trial court reversibly erred by allowing the prosecutor to ask it. In analyzing this argument, our review is limited to deciding whether the trial court's ruling was an abuse of discretion. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).

We begin by recognizing the general rule that the prosecutor may use hypothetical fact situations in order to explain the application of a particular law to the venire panel. *See Riddle v. State*, 888 S.W.2d 1, 6 (Tex. Crim. App. 1994). This

rule is subject to the restriction that the prosecutor may not ask a hypothetical question that amounts to an improper commitment question.

When considering whether the prosecutor has asked an improper commitment question, we apply a two-part test. *See Standefer v. State*, 59 S.W.3d 177, 182–83 (Tex. Crim. App. 2001). First, we must determine if the prosecutor's question is in fact a commitment question. *Id.* The question calls for a commitment if one of its possible answers would require the venireperson to resolve an issue or to refrain from resolving an issue on the basis of one or more facts contained within the question. *Id.* at 180. If the question is a commitment question, then we move on to the second part, which requires that we determine whether the question is proper or improper. *Id.* at 182–83. For the question to be proper, one of its possible answers must give rise to a valid challenge for cause, and the question must contain no more facts than necessary to test whether the venireperson is challengeable for cause. *Id.* If no possible answer would give rise to a valid challenge for cause, or if the question contains too many facts, then the question is improper and the trial court should not allow it. *Id.*

Applying these principles to appellant's case, we can assume without deciding that the prosecutor's question about the umbrella called for a commitment about joint possession. Nevertheless, we conclude that the commitment question, if any, was proper because it illustrated the legal definition of possession. Had the venireperson remained steadfast in his opinion that only the passenger was in possession of the umbrella (or alternatively, that no one was in possession of the umbrella), then the prosecutor would have established a valid basis for challenging the venireperson for cause because the venireperson would have misapplied the definition of possession. *See Bravo v. State*, 471 S.W.3d 860, 873–84 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (concluding that a series of hypothetical questions were proper because

they illustrated the law of parties). Also, the hypothetical question contained only the information necessary to illustrate the prosecutor's point about joint possession—i.e., that the umbrella was situated between two people. These facts were not specific to appellant's case, which involved a firearm discovered in an unoccupied vehicle, which had only been formerly occupied by two people. *See Lee v. State*, 176 S.W.3d 452, 461 (Tex. App.—Houston [1st Dist.] 2004) (concluding that a question was proper because it "did not contain additional facts specific to the case at bar that are unnecessary to explain the application of the law"), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006).

Even if we were to assume for the sake of argument that the prosecutor's hypothetical had been an improper commitment question, we would conclude that the trial court's error in allowing the hypothetical did not affect appellant's substantial rights. *See* Tex. R. App. P. 44.2(b).

When assaying potential harm from an improper commitment question, the ultimate issue is whether the defendant was tried by an impartial jury, or conversely, whether the jury or any specific juror was "poisoned" by the improper commitment question. *See Sanchez v. State*, 165 S.W.3d 707, 713 (Tex. Crim. App. 2005). There is no single, specific rule by which reviewing courts should assess this question of harm. *Id.* Courts instead consider the following set of non-exclusive factors: (1) whether the question was unambiguously improper; (2) how many, if any, venirepersons agreed to commit themselves; (3) whether the venirepersons who agreed to commit themselves actually served on the jury; (4) whether the defendant used peremptory challenges to eliminate any or all of those venirepersons; (5) whether the defendant exhausted all of his peremptory challenges upon those venirepersons and requested additional peremptory challenges; (6) whether the defendant timely asserted that a named objectionable venireperson actually served

on the jury because he had to exhaust his strikes on an improperly committed juror; and (7) whether there is a reasonable likelihood that the jury's verdict was substantially affected by the improper commitment question. *Id.* at 714.

In this case, not one of the venirepersons who was questioned on the subject of possession actually served on the jury, not even the venireperson who was presented with the hypothetical about the joint possession of the umbrella. They were all struck. In the process of making his strikes, defense counsel did not revisit the issue of the prosecutor's improper commitment question. Counsel did not request additional strikes or suggest that an objectionable juror was seated because his peremptory strikes were exhausted on other venirepersons.

Nonetheless, appellant suggests in his brief that the entire venire panel was poisoned by the prosecutor's hypothetical. The record does not support this suggestion. The prosecutor's leading theory during the trial was that appellant actually discharged the firearm, as the resident had testified. This evidence established appellant's individual possession over the firearm, which made the issue of joint possession superfluous.

Defense counsel suggested during the trial that the actual shooter was the resident's husband, and that the resident had falsely redirected blame on appellant. But the jury had a substantial basis for rejecting this theory. The resident testified that appellant had been driving a red or maroon vehicle. That evidence is consistent with the officer's testimony that the firearm was discovered in a maroon vehicle, which appellant had also identified as his own.

There was a defense witness who had controverted all of this testimony by claiming that appellant never had a firearm, that appellant was just a passenger in a gray vehicle, and that the actual shooter was driving around in a white vehicle when the shots were fired. The jury implicitly determined that this defense witness was

7

not credible, and there is no indication that this credibility determination was influenced by the prosecutor's commitment question about joint possession. The jury's credibility determination was more likely influenced by the evidence showing that appellant was near the spent shell casings and that the casings belonged to the firearm that was still at the scene, in the maroon vehicle.

For the foregoing reasons, we conclude that there is no reasonable likelihood that the jury was affected by the prosecutor's commitment question, and that any error by the trial court in allowing that question was harmless.

## CONCLUSION

The trial court's judgment is affirmed.


/s/    Tracy Christopher
Justice


Panel consists of Justices Christopher, Jewell, and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).