

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00144-CR

———————————————————

AUDIE LEE BUTLER, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CR22249

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

A jury convicted Appellant Audie Lee Butler of continuous sexual abuse of a child, a first-degree felony, and assessed his punishment at life imprisonment. *See* Tex. Penal Code Ann. § 21.02(b) (continuous sexual abuse of a child). The trial court sentenced Butler accordingly.

On appeal, Butler raises three issues:

[1] Was [Butler's commitment] question . . . improper . . . when he asked the venire [members] their level of agreement with whether they would assess [the] maximum punishment if they convicted that person of continuous sexual abuse of a young child?

[2] Did the trial court abuse its discretion by sustaining the State's objection to [Butler's] proper commitment question in voir dire that would show bias against considering the full range of punishment?

[3] Was [Butler] harmed by being unable to determine whether [the] venire members could consider the full range of punishment under the law?

All three issues turn on whether Butler asked an improper commitment question. We hold that he did, overrule all three issues, and affirm the trial court's judgment.

## I. THE VOIR DIRE QUESTION

During voir dire, the following exchange occurred:

[DEFENSE COUNSEL:] I'm going to ask y'all this question, and the question is: If I had found somebody guilty of the offense of continuous sexual abuse of a young child after hearing all the evidence, I would assess the maximum punishment allowed by law; in other words, I'd give life. That's the question I'm going to ask you. And I want to get a number out of you, a one through four. Number one is you strongly disagree with that—with that statement. Number two is you disagree

with the statement. Number three is, yeah, I would give life. And Number four is I strongly agree with that statement.

[THE PROSECUTOR:] I apologize to interrupt. Judge, I—I think that's an impermissible commitment question as to the—as to whether they would give life or not. They have no facts to—to make that particular decision. The law only requires that they have an open mind as to the full range, as opposed to committing them to a life sentence.

[DEFENSE COUNSEL:] Your Honor, I think that's a proper commitment question. This jury is gonna have to decide what the sentence is if they find [Butler] guilty, and that's a scaled question that I just use to help evaluate the jurors. I'm not asking them to tell me, oh, I guarantee you I'm gonna give life. I'm just trying to find out how they feel about that statement so I can make a more intelligent use of my peremptory challenges.

THE COURT: Say the question again.

[DEFENSE COUNSEL:] Yes, sir. I'm gonna ask them whether they strongly [dis]agree, disagree, agree or strongly agree with this question: If I had found someone guilty of the offense of continuous sexual abuse of a young child, after hearing all of the evidence, I would assess the maximum punishment allowed by law.

THE COURT: Sustain the objection.

## II. APPLICABLE LAW

A venire member, if selected as a juror, must commit to follow the law. *Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001). But asking a venire member to commit to something that the law does not require is improper. *Id.* The litmus test for a proper commitment question is whether one of the possible answers to it gives rise to a valid challenge for cause. *Id.* at 182; *see Atkins v. State*, 951 S.W.2d 787, 789 (Tex. Crim. App. 1997).

3

Venire members who state that they cannot consider the full range of punishment for any of the charged offenses are challengeable for cause for having a bias or prejudice against the law. *Ladd v. State*, 3 S.W.3d 547, 559 (Tex. Crim. App. 1999). Both the State and the defendant are entitled to jurors who can consider the entire range of punishment for the offense, from the maximum to the minimum and all points in between. *Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010). Therefore, both sides may question the venire panel on the range of punishment and may commit jurors to consider the entire range of punishment for the statutory offense. *Id.* However, attorneys veer into impermissible commitment questions when they attempt to get venire members to commit to a particular sentence based on specific evidentiary facts. *See id.* For example, a party may ask venire members if they could consider the minimum of five years' imprisonment in a murder case, but a party may not ask them if they could consider five years in prison in a case in which the State alleged that the defendant had tortured the victim. *Id.* Because that question goes beyond the statutory elements and statutory manner or means, it is improper. *Id.*

Determining whether a commitment question is improper has two steps:

(1) Is the question a commitment question?

(2) Does the question include facts—and only those facts—that lead to a valid challenge for cause?

4

*Standefer*, 59 S.W.3d at 182. If the answer to (1) is "yes" and the answer to (2) is "no," then the question is an improper commitment question. *Id.* at 182–83.

"Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Id.* at 179. "[A]lthough commitment questions are generally phrased to elicit a 'yes' or 'no' answer, an open-ended question can be a commitment question if the question asks the prospective juror to set the hypothetical parameters for his decision-making." *Id.* at 180. "To summarize, then, a question is a commitment question if one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question." *Id.*

### III. STANDARD OF REVIEW

The trial court has broad discretion over voir dire and jury selection. *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003). Thus, we leave to the trial court's discretion a particular question's propriety and will not disturb its decision absent an abuse of discretion. *Id.* A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry. *Id.* at 755–56.

### IV. DISCUSSION

The parties do not dispute that the question was a commitment question. They dispute whether it was an improper commitment question.

Butler sought to determine how likely the venire members were to assess the maximum sentence "after hearing all the evidence" without specifying any particular evidence. Butler acknowledges this point in his brief: "The question at issue seeks to commit each panel member . . . to whether [the panel member] would give the maximum sentence regardless of the evidence." The State articulated Butler's question a bit differently: "[Butler] proposed to ask each venire[]member how likely each would be to impose a life sentence in the underlying case if [Butler] was found guilty." Under either articulation, the venire members were asked how likely they were to assess the maximum sentence in an evidentiary vacuum.

On first impression, the question might be construed as an indirect way to determine if the venire members could consider the full range of punishment. If a venire member committed to a specific punishment without hearing any evidence, that venire member would effectively not be open to the full range of punishment. Butler's second issue is based on this premise. But the gist of Butler's question was not to get venire members to commit to a specific punishment to the exclusion of any other punishment. Butler made this clear at trial: "I'm not asking them to tell me, oh, I guarantee you I'm gonna give life."

Rather, the crux of Butler's question was to determine how strongly the venire members felt a maximum punishment was merited for the offense itself without knowing any particulars. On a scale of one to four, he wanted to know how likely it was that they would assess a life punishment. Therefore, the question was not limited

6

to whether a potential juror could not consider the full range of punishment. It sought a sneak peek of the punishment within the permissible range that the prospective juror would likely impose.

Further, Butler was trying to determine the extent to which the venire members had prejudged the punishment within the permissible range without knowing any of the underlying facts. Indeed, Butler asserts that his question was proper precisely because his question did not add any unnecessary facts.

"Voir dire questions that are not intended to discover bias against the law or prejudice for or against the defendant[] but rather seek only to determine how jurors would respond to the anticipated evidence and commit them to a specific verdict based on that evidence[] are improper." *Owens v. State*, 549 S.W.3d 735, 744 (Tex. App.—Austin 2017, pet. ref'd). Here, Butler was probing for bias or prejudice against both the law (favoring the maximum sentence to the detriment of lesser sentences) and him (because of the nature of the offense), but he was also probing for the verdict the venire members, as jurors, would likely render on punishment if they found him guilty. Probing for bias and prejudice versus probing for a preview of the verdict might seem indistinguishable. But they are distinguishable. The former provides information on the venire members' thinking—their biases and prejudices. The latter invites the venire members to commit to a likely verdict based on a hypothetical. Butler's hypothetical did not insert any extraneous facts, but it was still a hypothetical that invited the venire members to commit to a likely verdict.

In the process of answering the hypothetical, the venire members would not only reveal their biases and prejudices but would also take the additional step of prejudging the punishment issue before hearing any evidence. This goes to the heart of the prohibition against improper commitment questions:

> The defendant has a constitutional right to a trial "by an impartial jury." Thus, the purpose for prohibiting improper commitment questions by either the State or the defendant is to ensure that the jury will listen to the evidence with an open mind—a mind that is impartial and without bias or prejudice—and render a verdict based upon that evidence. Commitment questions require [venire members] to promise that [they] will base [their] verdict or course of action on some specific set of facts before [they have] heard any evidence, much less all of the evidence in its proper context. It is this prejudgment of the value and importance of certain evidence that is the evil to be avoided unless the law requires such a commitment.

*Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005) (footnote omitted).

Additionally, regardless of how the venire members answered the question, they would potentially box themselves into a restrictive punishment range before hearing any evidence. The law requires venire members to be able to consider the full punishment range; it does not require them to commit to a particular punishment area within that statutory range. Asking a venire member to commit to something that the law does not require is improper. *Standefer*, 59 S.W.3d at 181.

Moreover, by committing to one area, venire members could prejudice their consideration of the other areas. The question and answer lend themselves to confirmation bias. "Confirmation bias" is defined as "bias that results from the tendency to process and analyze information in such a way that it supports one's

8

preexisting        ideas        and        convictions."                Dictionary.com, https://www.dictionary.com/browse/confirmation-bias (last visited July 31, 2023).

Finally, so long as the venire members could have considered the full range of punishment—regardless of where their inclinations lay within that range—they would not have been challengeable for cause. *See Cardenas*, 325 S.W.3d at 184; *Standefer*, 59 S.W.3d at 182. Therefore, any answer that the venire members would have given to Butler's question would not have subjected them to a challenge for cause.

The question was thus an improper commitment question. *See Standefer*, 59 S.W.3d at 181–82.

The record shows that Butler could have pursued other questions regarding the venire members' punishment biases or prejudices. The trial court did nothing to prohibit other questions regarding these concerns. All the trial court did was sustain the State's objection to the form of Butler's question. *See Hernandez v. State*, 390 S.W.3d 310, 316 (Tex. Crim. App. 2012). When the trial court does not prohibit an area of inquiry, a defendant must rephrase the question or pose a similar proper question. *See Wright v. State*, 28 S.W.3d 526, 534 (Tex. Crim. App. 2000).[1] To the extent that Butler argues otherwise, we disagree that the trial court cut him off from discovering the inquired-about biases and prejudices.

---

[1]*Wright* was superseded on other grounds by statute. *See Meyer v. State*, No. 02-15-00217-CR, 2016 WL 7487756, at *3 n.2 (Tex. App.—Fort Worth Dec. 30, 2016, pet. ref'd) (mem. op., not designated for publication).

Having determined that Butler asked an improper commitment question and, therefore, that the trial court did not abuse its discretion by sustaining the State's objection, we overrule all three of his issues.

## V. CONCLUSION

We affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 3, 2023