

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00280-CR

---

**JOSE ELISO ZAVALA, APPELLANT**

V.

**THE STATE OF TEXAS, APPELLEE**

On Appeal from the 84th District Court
Hansford County, Texas
Trial Court No. CR01789, Honorable Curt W. Brancheau, Presiding

September 29, 2023

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Following a plea of not guilty, Appellant, Jose Eliso Zavala, was convicted by a jury of aggravated sexual assault of a child under age fourteen and sentenced to fifty-two years in prison and assessed a fine of $10,000.[1] By three issues, Appellant (1) challenges the constitutionality of article 38.37 of the Texas Code of Criminal Procedure as applied to him when defense counsel was denied cross-examination of witnesses outside the

---

[1] TEX. PENAL CODE ANN. § 22.021(a)(2)(B).

jury's presence; (2) contends the extraneous offense evidence provided was more prejudicial than probative; and (3) asserts the trial court erred in permitting the State to ask improper commitment questions to the jury panel and in refusing to strike potential jurors who changed their answers. We affirm.

## BACKGROUND

Appellant and Mrs. Gomez, who separated in April 2021 for reasons unrelated to the underlying case, have ten children together. They lived in a one-bedroom house during the alleged incidents. She has three grown daughters from a prior marriage. After the separation, their daughter, V.Z., attempted suicide twice because she had been raped when she was younger but would not disclose by whom.[2] Appellant's wife questioned some of her children to see if they knew the perpetrator's identity. K.Z., the victim in the underlying case, responded by asking her mother if Appellant was the offender because he had assaulted her. Mrs. Gomez's older daughters, Angelica and Maria also made allegations Appellant had inappropriately touched them when they were much younger. Mrs. Gomez reported the allegations to law enforcement and Appellant was arrested.

The trial court held a pretrial hearing pursuant to article 38.37 of the Texas Code of Criminal Procedure, which generally allows for admission of extraneous offenses of a sexual nature committed against a child. At the commencement of the hearing, the following colloquy occurred:

> [Prosecutor]: Your Honor, the State and defense counsel have discussed this matter and we have agreed that the State will tender the witnesses. And we think what's proper is we'll tender the witness and defense counsel will not cross-examine.

---

[2] The record shows Appellant was not the person V.Z. eventually disclosed as the perpetrator.

[Defense Counsel]: It is my understanding that I don't have a right to cross-examination, at least the way that the case law has come out. So I'm – would object to just tendering the notices. I don't think that's sufficient to establish beyond a reasonable doubt.

*** 

I would just like to make objection to 38.37 generally. I do believe it violated his right to due process. I do believe it is unconstitutional.

*** 

I would ask that the Court still engage in the 403 balancing test . . . .

The trial court overruled the objection based on constitutional grounds and reminded defense counsel to re-urge her request for a Rule 403 balancing test at the conclusion of the testimony.

Maria and Angelica,[3] as well as Appellant's daughter, Y.Z., testified during the 38.37 hearing. Maria testified when she was approximately seven or eight years old, Appellant inappropriately touched her vaginal area under her clothing while she was asleep. His conduct would awaken her, and he would stop. According to Maria, it was not an isolated incident. She described other occurrences in which Appellant would tickle her vaginal area aggressively, but she knew he was not playing. She did not tell her mother of his conduct because he had told her she would not be believed. His behavior did not stop until she moved out of the house at age fourteen.

After Maria testified, the prosecutor requested a ruling on whether defense counsel could cross-examine the witnesses during the 38.37 hearing. Defense counsel

---

[3] The stepdaughters alleged the abuse against them began while they were living in Florida. At that time, the stepdaughters shared a bedroom.

3

responded it was within the trial court's discretion and also requested a ruling to avoid procedural default. The trial court overruled the request to cross-examine the witnesses during the 38.37 hearing.

The hearing continued with Angelica testifying Appellant began touching her inappropriately "all over [her] body parts," including her vaginal area and breasts, when she was in the third grade. The touching, which occurred over her clothes, would begin with tickling or pillow fights. She would kick him in his private parts to get him to stop. When she asked him to stop, he told her no one would believe her if she said anything. She began blocking the bedroom door with a dresser so he would not enter. She indicated the touching stopped when Appellant kicked her out of the house at age sixteen. Angelica claimed she discussed the abuse with Maria when they were much older but had not discussed it with her half-sister, Y.Z.

Y.Z., a decade younger than her oldest half-sister, testified the family moved to the one-bedroom house when she was in fifth grade. She confirmed Appellant touched her in ways which made her feel uncomfortable. She described the way Appellant hugged and grabbed her tightly with his hands across her breasts. He would have her sit on his lap as if she "was a kid." She felt "weird" because she was older and although she told him to stop because she was "not a little kid," he would hold her tighter.

Y.Z. and her siblings all slept in the living room of the one-bedroom house wherever there was space. The room had two couches, bunk beds, and floor space for sleeping. She testified Appellant would try to unzip her pants while she slept, and she would "move and fidget" so he would stop. According to Y.Z., there were many such

4

occurrences. She occasionally slept under the bunk beds because she felt safer there. She told of a particular time when she was in the sixth grade and had returned from a band trip. She was tired and fell asleep on the floor but woke up when she felt him lift her shirt. She testified, "I was on the floor with him. He pushed me down and he was on top of me. But he wouldn't let me go and he made me feel uncomfortable." When asked if Appellant ever woke her up by touching her vaginal area, she answered, "no." She denied ever being touched underneath her clothes.

Appellant was denied the opportunity to cross-examine any of the witnesses. The prosecutor argued the evidence met the threshold of article 38.37. He advised the trial court the victim in the underlying case planned to testify to a similar pattern of inappropriate touching, tickling and wrestling, unbuckling clothing, and touching her vaginal area as she slept. Defense counsel disputed whether the evidence showed a pattern of conduct that would fall within the statute because Y.Z. did not testify Appellant touched her underneath her clothing. Counsel also argued the testimony of Appellant's stepdaughters was too vague, would cause confusion for the jury, take too much time, and be more prejudicial than probative.

The trial court observed the statute does not require the conduct to be identical and believed the testimony of the stepdaughters would establish an "MO." The trial court ruled the testimony of all three witnesses would have a bearing on the underlying case and found the probative value of their testimony outweighed any prejudicial effect.

At trial, K.Z., who had just turned eighteen, testified when she was in sixth or seventh grade, Appellant began molesting her.[4]  She was sleeping on a couch one night and was awakened with his fingers inside her vaginal area.  He was hovering over her but stopped when she turned around and saw him.  Although she previously reported five or six occurrences to a forensic interviewer, she testified she "for sure" remembered that one particular incident.  She recalled another time when she was awakened by Appellant trying to unbuckle her jeans.  She, just as Y.Z. testified at the pretrial hearing, also claimed to sleep under the bunk beds so she would not be out in the open when she was asleep.

During cross-examination, the defense pointed out that K.Z. made inconsistent statements regarding the frequency of the incidents during her forensic interview.  K.Z. explained she remembered things differently during the interview.  Defense counsel attempted to discredit K.Z.'s description of how Appellant abused her.

At trial, Angelica and Maria repeated their testimony from the pretrial hearing.  Cross-examination was brief.  After presentation of the evidence, defense counsel re-urged her objections based on article 38.37 and the highly prejudicial nature of the testimony versus its probative value.  She requested an appropriate limiting instruction.  After less than an hour of deliberations, the jury returned a guilty verdict.

**ISSUE ONE—CONSTITUTIONALITY OF ARTICLE 38.37**

Appellant maintains article 38.37 is unconstitutional as it was applied to him because it violated his Sixth Amendment right of confrontation by denying cross-examination of witnesses during the pretrial hearing rather than limiting the scope of

---

[4] K.Z. did not testify at the 38.37 hearing.

6

cross-examination. Appellant also faults the trial court for failing to consider each witness's testimony individually because there were significant differences negating a propensity to commit sexual assault of a child in conformity with the allegations. Cross-examination, Appellant urges, would have revealed whether the witnesses spoke with each other to compare or concoct stories. We agree the complete denial of the right to cross-examination under article 38.37 was error but find the error did not harm Appellant.

## ANALYSIS

In an as-applied constitutional challenge, the claimant "concedes the general constitutionality of the statute but asserts the statute is unconstitutional as applied to his particular facts and circumstances."[5]  *Estes v. State*, 546 S.W.3d 691, 698 (Tex. Crim. App. 2018). Because a statute may be valid as applied to one set of facts and invalid as applied to a different set of facts, a litigant must show that in its operation, the challenged statute was unconstitutionally applied to him. *Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011). We presume the statute is valid and the Legislature did not act unreasonably or arbitrarily in enacting it. *Faust v. State*, 491 S.W.3d 733, 744 (Tex. Crim. App. 2015).

This Court has previously held article 38.37, section 2(b) does not violate an appellant's due process rights and is therefore, not unconstitutional. *Bezerra v. State*, 485 S.W.3d 133, 139–40 (Tex. App.—Amarillo 2016, pet. ref'd), *cert. denied*, 580 U.S.

---

[5] Although Appellant does not specifically concede constitutionality of the statute, he nevertheless vehemently objected at the 38.37 hearing and during trial to its unconstitutional nature and its highly prejudicial effect as applied to him.

7

998, 137 S. Ct. 495, 196 L. Ed. 2d 404 (2016).  Nothing in the underlying case persuades this Court to deviate from *Bezerra*.

Article 38.37 carves an exception to the prohibition of use of extraneous offenses to show an actor's character and that he acted in conformity therewith as provided in Rules 404 and 405 of the Texas Rules of Evidence.  As relevant here, article 38.37 provides as follows:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b).  Section 2-a requires the trial court to determine whether the evidence sought to be admitted can be "adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt."

The Sixth Amendment protects a criminal defendant's right to physically confront witnesses who testify against him.  *Haggard v. State*, 612 S.W.3d 318, 324 (Tex. Crim. App. 2020).  Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.  *Coronado v. State*, 351 S.W.3d 315, 323 (Tex. Crim. App. 2011) (citing *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)).  The right to ask probing, adversarial cross-examination questions "lies at the core of an American criminal trial's truth-seeking function."  *Coronado*, 351 S.W.3d at 325.

8

The right to cross-examination is not unqualified. A trial court may limit the scope and extent of cross-examination, so long as those limits do not infringe on the right of confrontation. *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016). However, it is not within a trial court's discretion to prohibit a defendant from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of a witness. *See id.* (citing *Johnson v. State*, 433 S.W.3d 546, 551 (Tex. Crim. App. 2014)). *See also Thompson v. State*, No. 07-20-00101-CR, 2022 Tex. App. LEXIS 1849, at *20 (Tex. App.—Amarillo March 21, 2022, no pet.) (mem. op., not designated for publication) (citing *Harris v. State*, 475 S.W.3d 395, 403 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (observing a defendant's right to a fair trial is protected by procedural safeguards within article 38.37 and that defense counsel has the right to challenge any witness's testimony by cross-examination)).[6]

This Court concludes the trial court's complete denial of cross-examination of the three witnesses during the article 38.37 hearing was error. Because article 38.37 is an evidentiary statute, a violation does not result in constitutional error. Rather, we review the error for harm under rule 44.2(b) of the Texas Rules of Appellate Procedure. Tex. R. App. P. 44.2(b). We must disregard non-constitutional error if, after examining the record as a whole, we have a fair assurance the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Id.*

---

[6] The State argues the right to cross-examination is not a pretrial right. The Court of Criminal Appeals has not squarely addressed the issue in the context of an article 38.37 pretrial hearing. *See generally Ex parte Estrada*, 640 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd).

The witnesses at the pretrial hearing all testified to incidents of sexual contact committed against them by Appellant. There were similarities in the testimony including how the touching was initiated by tickling or horseplay and escalated to touching of the breasts and vaginal areas. Defense counsel had an unfettered opportunity to cross-examine the witnesses at trial. The cross-examination, however, was brief. Because K.Z.'s testimony alone would have been sufficient to support Appellant's conviction, TEX. CODE CRIM. PROC. ANN. art. 38.07, Appellant has not shown any harm by the trial court's denial of cross-examination at the pretrial hearing. This Court has a fair assurance the error did not influence the jury's verdict. Issue one is overruled.

**ISSUE TWO—BALANCING TEST OF TEXAS RULE OF EVIDENCE 403**

Appellant contends the trial court abused its discretion in admitting the testimony of Appellant's adult stepdaughters at trial. Specifically, he asserts Angelica's and Maria's testimony did not indicate he had a signature or modus operandi.[7] He complains of the lack of evidence of conversations they had regarding the alleged abuse or whether they compared their stories. He maintains the testimony should have been excluded as more prejudicial than probative. We disagree.

**ANALYSIS**

We review a trial court's ruling under Rule 403 for abuse of discretion. *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013). A reviewing court must afford the decision "an especially high level of deference." *Robisheaux v. State*, 483 S.W.3d 205,

---

[7] Appellant does not challenge admission of the testimony of his daughter, Y.Z., who also testified at the article 38.37 hearing.

10

218 (Tex. App.—Austin 2016, pet. ref'd) (citing *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007)).

Rule 403 provides that otherwise relevant and admissible evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "The plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Robisheaux*, 483 S.W.3d at 217–18. Evidence is *unfairly* prejudicial when it has "an undue tendency to suggest that a decision was made on an improper basis." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g) (emphasis added). Sexually related bad acts and misconduct involving children are inherently inflammatory. *Id.* at 397. This is so because all evidence against a defendant is, by its very nature, designed to be prejudicial. *Pawlak*, 420 S.W.3d at 811 (citing *Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002) (Keller, P.J., concurring) (explaining that arguing proffered evidence is prejudicial is insufficient to exclude it under Rule 403 because only *unfair* prejudice is addressed by Rule 403) (emphasis in original)).

In conducting a Rule 403 balancing test, the trial court weighs the following factors:

(1) the inherent probative force of the proffered evidence along with

(2) the proponent's need for that evidence against

(3) any tendency of the evidence to suggest decision on an improper basis

(4) any tendency of the evidence to confuse or distract the jury from the main issues

11

(5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and

(6) the likelihood presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Hall v. State*, 663 S.W.3d 15, 32 (Tex. Crim. App. 2021) (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)).

The testimony of Appellant's stepdaughters was probative to establish a pattern of conduct by Appellant in touching his victim's private parts. The witnesses testified similarly that he engaged in tickling which would escalate into inappropriate touching that made them feel "weird" or uncomfortable. The State's need to establish a pattern of conduct justified admission of Angelica's and Maria's testimony given the lack of any physical evidence to support the allegations made by K.Z.

The jury charge included a limiting instruction for the jurors to consider the objected-to testimony only if they believed the testimony beyond a reasonable doubt. Thus, the jury could not have been confused or distracted from the main issue because the testimony of Appellant's stepdaughters shed light on his propensity to inappropriately touch them.

The testimony of Angelica and Maria consumed approximately thirty-eight pages of a 232-page volume of the reporter's record. It did not consume an inordinate amount of time.

It does not matter that the complained-of extraneous testimony was used to establish character and conformity therewith for that is one of the reasons the statute permits its use. *Rambo v. State*, Nos. 07-18-00214-CR, 07-18-00215-CR, 07-18-00216-

CR, 2019 Tex. App. LEXIS 2206, at *10–11 (Tex. App.—Amarillo March 20, 2019, pet. ref'd) (mem. op., not designated for publication). Thus, we cannot say the trial court abused its discretion in rejecting Appellant's Rule 403 challenge. Issue two is overruled.

**ISSUE THREE—IMPROPER COMMITMENT QUESTION**

Appellant contends the trial court abused its discretion in not striking Jurors Reid and Gibson after they changed their answers to an improper commitment question asked by the prosecutor. He contends the error was harmful. We agree the question was improper but disagree it was harmful.

A trial court has broad discretion over jury selection and whether to grant or deny any objections. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. 2002). An abuse of discretion occurs when an improper question is allowed to be asked. *Id.*

A commitment question commits a prospective juror to resolve or refrain from resolving an issue a certain way after learning a particular fact. *Davis v. State*, 349 S.W.3d 517, 518 (Tex. Crim. App. 2011); *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Such questions are often designed to elicit a "yes" or "no" answer in which one or both of the possible answers commit the jury to resolving an issue a certain way. *Standefer*, 59 S.W.3d at 179. Not all commitment questions are improper. *Id.* at 181. For a commitment question to be proper, one of the possible answers to that question must give rise to a challenge for cause. *Id.* at 182. Even if the question meets this challenge for cause requirement, "the question may nevertheless be improper if it includes facts *in addition* to those necessary to establish a challenge for cause." *Id.* (Emphasis added). To be proper, a commitment question must contain *only* those facts

13

necessary to test whether a prospective juror is challengeable for cause. *See id.* (Emphasis in original). *See also Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005).

### ANALYSIS

During voir dire, defense counsel posed the question of whether prospective jurors could consider community supervision. Juror Close responded she could not if Appellant was found guilty. Juror Reid answered, "Possibly. I'll be honest. Probably not." Gibson answered, "No."

The trial court interjected as follows:

> I want to be sure that, for everyone who said there is no way they could consider probation whatsoever . . . if you had a sixteen-year-old and a twenty-year-old, you understand that would -- even if it was a consensual act, that would mandate that there's no way you could give that person probation. . . . So I just want to be sure everyone, when they said, "No, I can't go with probation," that you're saying there is absolutely no scenario whatsoever . . . where probation would be eligible.

The prosecutor offered a different scenario and asked the panel if they could consider community supervision for a conviction involving a "twenty-year-old girl and a sixteen-year-old boy." Juror Close responded, "yes, I could." Juror Reid answered, "possibly." Juror Gibson replied, "I could." All three changed their answers under the new fact scenario.

After the named jurors vacillated, defense counsel suggested the prosecutor had asked "a commitment question as to a specific set of facts." The trial court responded, "She's got a point." Defense counsel objected, argued Appellant would suffer irreparable

14

harm, and requested that prospective jurors who had answered earlier that they could not consider community supervision be struck for cause. The trial court suggested the State rehabilitate jurors as a group.

Without defense counsel moving for mistrial, the trial court preemptively announced it would deny such a request and added, "No more commitment --" to which the prosecutor answered, "[y]es." Challenges for cause by defense counsel to Reid and Gibson were denied and they were seated on the jury. Juror Close was not seated on the jury.

The prosecutor's injection of new facts—a sexual assault involving a twenty-year-old girl and a sixteen-year-old boy—asked the jurors to commit to whether they could *consider* community supervision. (Emphasis added).[8] The question was designed to elicit a "yes" or "no" answer. A negative answer to such a question could be interpreted as the inability of a juror to consider the full range of punishment making the juror challengeable for cause. *Montoya v. State*, No. 03-15-00125-CR, 2016 Tex. App. LEXIS 9113, at *3–9 (Tex. App.—Austin Aug. 23, 2016, no pet.) (mem. op., not designated for publication). Here, however, under the hypothetical presented by the prosecutor, additional facts were introduced beyond what was necessary to sustain a challenge for cause. *Standefer*, 59 S.W.3d at 182. Thus, the question was an improper commitment question.

---

[8] The word "consider" often marks a commitment question in which a potential juror is asked to refrain from resolving an issue after learning a fact that could be used to resolve that issue. *Standefer*, 59 S.W.3d at 180.

Having found the prosecutor asked an improper commitment question, we must evaluate the error for harm pursuant to Rule 44.2(b) of the Texas Rules of Appellate Procedure. *Sanchez*, 165 S.W.3d at 713. This Court must focus on "whether a biased juror—one who had explicitly or implicitly promised to prejudge some aspect of the case before the State's improper questioning—actually sat on the jury." *Id.* In other words, was the jury or any specific juror "poisoned" by the improper commitment question on a legal issue or fact that was important to the determination of the verdict or sentence? *Id.*[9]

Defense counsel exhausted her peremptory strikes without attempting to strike Jurors Reid and Gibson. The record does not reflect she requested additional peremptory challenges. Her request to have them stricken was denied by the trial court and they were seated on the jury.[10] She argued Appellant would suffer irreparable harm because those jurors who changed their minds on community supervision would expect to hear

---

[9] A non-exhaustive list of factors to consider in assessing harm include the following:

(1) whether the questions were unambiguously improper and attempted to commit one or more veniremen to a specific verdict or course of action;
(2) how many, if any, veniremen agreed to commit themselves to a specific verdict or course of action if the State produced certain evidence;
(3) whether the veniremen who agreed to commit themselves actually served on the jury;
(4) whether the defendant used peremptory challenges to eliminate any or all of those veniremen who had committed themselves;
(5) whether the defendant exhausted all of his peremptory challenges upon those veniremen and requested additional peremptory challenges to compensate for their use on improperly committed veniremen;
(6) whether the defendant timely asserted that a named objectionable venireman actually served on the jury because he had to waste strikes on the improperly committed jurors; and
(7) whether there is a reasonable likelihood that the jury's verdict or course of action in reaching a verdict or sentence was substantially affected by the State's improper commitment questioning during voir dire.

*Sanchez*, 165 S.W.3d at 714.

[10] The State notes defense counsel did not object to the final make-up of the jury. However, the record demonstrates she opposed Jurors Reid and Gibson throughout the discussion on the prosecutor's commitment question and clarified she was asking for them to be stricken to preserve error.

testimony consistent with the prosecutor's hypothetical rather than the actual facts which they had earlier indicated would prevent them from considering community supervision.

Appellant was convicted of aggravated sexual assault of a child under age fourteen under section 22.021 of the Penal Code. As such, he was not eligible for community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.056(4) (providing a defendant is not eligible for jury-recommended community supervision following a conviction under section 22.021). The record does not establish Appellant was tried by an impartial jury or that any specific juror was "poisoned" by the improper commitment question. *Sanchez*, 165 S.W.3d at 713. We conclude the sentence imposed by the jury was not substantially affected by the improper commitment question and Appellant was not harmed by the improper commitment question. Issue three is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Alex Yarbrough
Justice

Do not publish.

17