

# NUMBER 13-24-00321-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JUAN JOSE ZARATE SANCHEZ,                                    Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

## ON APPEAL FROM THE 377TH DISTRICT COURT
## OF VICTORIA COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Cron**
**Memorandum Opinion by Justice Silva**

A jury found appellant Juan Jose Zarate Sanchez guilty of possession with intent to deliver a controlled substance in the amount of four grams or more but less than two hundred grams, a first-degree felony with an enhanced range of punishment by his repeat felony offender status. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d); *see also*

TEX. PENAL CODE ANN. § 12.42(c)(1). At punishment, the jury found appellant to be a repeat felony offender after appellant pleaded true to the State's enhancement allegation and sentenced him to thirty-five years' confinement in the Texas Department of Criminal Justice Correctional Institutional Division. *See id.* Appellant argues (1) he received ineffective assistance of counsel, and (2) the State committed prosecutorial misconduct. We affirm.

## I. BACKGROUND

On July 6, 2023, dispatch received an anonymous call that there were subjects driving a gold or tan Toyota Solara possibly selling drugs in an apartment complex. Victoria Police Department (VPD) Officer Joshua Homan responded to the call and located an unoccupied vehicle matching the description. Officer Homan testified that he ran the license plate, and the registration was expired. He was advised that the Victoria County Special Crimes Unit (SCU) was in the area observing the vehicle. Officer Homan testified he was advised to leave and "stage in the area" until the vehicle departed. Shortly thereafter, he followed the vehicle and conducted a traffic stop due to the expired registration. As Officer Homan approached the vehicle, he could smell a strong odor of marijuana. Appellant was identified as the driver and owner of the vehicle. Appellant provided Officer Homan an expired driver's license and advised he did not have proof of insurance. Officer Homan identified the front seat passenger as Veronica Elliott and rear passenger as Hector Villarreal. SCU arrived to assist and ordered the occupants out of the vehicle for officer safety. Officer Homan testified that SCU searched the vehicle, and he conducted a secondary search of the vehicle. Officers located a cigarette box on the driver's side that contained "a small brown, almost tar-like substance . . . believed to be

2

heroin." Officer Homan testified that he located "a small scale hidden underneath the carpet of the trunk" of the vehicle. He further testified that based on his training and experience the small scale was "indicative of selling narcotics" and "common in the drug industry."

SCU Detective Timothy Ramirez testified that he was conducting a "proactive narcotics investigation[]" in a known "high drug and crime area." He further testified that SCU "conduct[s] pretextual stops and attempt to locate drug dealers and users." On July 6, 2023, he assisted VPD Officers Homan and Ryan Ramos during the traffic stop. Detective Ramirez testified that when he approached the vehicle the odor of marijuana was noticeable. He requested that the occupants be removed from the vehicle. Detective Ramirez searched the vehicle and found the following items: a cigarette box with "a hit of heroin," tetrahydrocannabinol (THC) cartridges, marijuana, synthetic marijuana, a marijuana blunt, prepackaged heroin, and a scale. Detected Ramirez confirmed the prepackaged heroin was in fact heroin after he conducted a field test. He also testified that "in street drug sales, a dealer typically has multiple drugs . . . to facilitate the need of street sales." Based on his training and experience, the packaging of the heroin was "indicative of distribution and dealing." Subsequently, appellant, Elliott, and Villarreal were arrested.

Officer Ramos testified that he was conducting patrol when he received a call from dispatch about "possible drug activity." He was informed that SCU was staged at an apartment complex and waited for further instruction. Officer Ramos then followed Officer Homan as he conducted the traffic stop and made contact with the occupants on the passenger side of the vehicle. Officer Ramos testified that he observed the occupants to

3

be "a little nervous" and smelled marijuana. Officer Ramos stated that they "conduct[ed] a probable cause search of the vehicle." He testified that officers found heroin in the vehicle. Officer Ramos stated that he does not often "see heroin on the streets of Victoria." He explained that based on his training and experience "anything roughly over [three] to [four] grams . . . is indicative of manufacture/delivery."

On July 27, 2023, appellant, while he was detained, executed an unsworn declaration declaring under penalty of perjury that Elliott and Villarreal "had no prior knowledge [of] the drugs in the car." *See* TEX. CIV. PRAC & REM. CODE ANN. § 132.001. He also addressed a letter to the Victoria County District Attorney informing her that "[he] told [Villarreal] to stash the drugs and the pipe [he] handed him" during the traffic stop. Appellant further stated that "[he] take[s] complete responsibility for the drugs found in the car."

Subsequently, appellant was indicted for "knowingly possess[ing], with intent to deliver, a controlled substance, namely heroin, in an amount of four grams or more but less than 200 grams." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d). He pleaded not guilty and proceeded to trial where he was found guilty by a jury. During punishment, appellant voluntarily stipulated to his prior felony conviction making him a repeat felony offender, and he was sentenced to thirty-five years' confinement. This appeal followed.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant argues that his trial counsel's performance was constitutionally defective because he "fail[ed] to object to the multiple improper commitment questions" asked by the State during voir dire.

4

**A.     Standard of Review and Applicable Law**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991)). "[A] person claiming ineffective assistance of counsel must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *Ex parte Covarrubias*, 665 S.W.3d 605, 609 (Tex. Crim. App. 2023) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

To satisfy the first prong, deficiency is established by "showing that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, considering the facts of the case viewed from counsel's perspective at the time of the representation." *Ex parte Garza*, 620 S.W.3d 801, 808–09 (Tex. Crim. App. 2021). The Texas Court of Criminal Appeals has routinely held that "claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). "On direct appeal, the record is usually inadequately developed and 'cannot adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation.'" *Id.* (quoting *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)). In the absence of an explanation in the record for why counsel's conduct allegedly fell below this objective standard, we will "assume a strategic motivation if any can possibly be imagined" and not

5

conclude that the challenged conduct constituted deficient performance unless the conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *see Ex parte Westerman*, 570 S.W.3d 731, 731 n.1 (Tex. Crim. App. 2019).

The appellant bears the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson*, 9 S.W.3d at 813; *Perez v. State*, 689 S.W.3d 369, 381 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.). We employ a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance and that it was motivated by a sound trial strategy. *Strickland*, 466 U.S. at 689; *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023). The presumption of a sound trial strategy generally cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007) ("The lack of a clear record usually will prevent the appellant from meeting the first part of the *Strickland* test."); *Davis v. State*, 533 S.W.3d 498, 510 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd). If there is any basis for concluding that counsel's conduct was strategic, then further inquiry is improper. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). We consider "the reasonableness of counsel's actions at the time, rather than viewing such actions through the benefit of hindsight." *Hart*, 667 S.W.3d at 782.

To establish prejudice under the second prong, the appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to

consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). Accordingly, failure to make a showing under either *Strickland* prong defeats a claim for ineffective assistance. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010) (citing *Thompson*, 9 S.W.3d at 813).

**B.  Analysis**

Appellant complains that his trial counsel "was ineffective by failing to object to the multiple improper commitment questions" allegedly asked by the State during voir dire and that his trial counsel "withheld its objections . . . with no possible sound trial strategy."

Commitment questions are impermissible unless the law requires a commitment. *Davis v. State*, 349 S.W.3d 517, 518 (Tex. Crim. App. 2011). A commitment question is one that commits a prospective juror to resolve or refrain from resolving an issue a certain way after learning a particular fact. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Commitment questions often require a "yes" or "no" answer that commits the juror to resolve an issue in a particular way. *Id.* However, open-ended questions may also be commitment questions if they prompt a prospective juror to set hypothetical decision-making parameters. *Id.* at 180.

When the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard. *Id.* at 181. For a commitment question to be proper, one of the possible answers must give rise to a valid challenge for cause. *Id.* at 182. However, an otherwise proper commitment question may nevertheless be improper if it includes facts in addition to those necessary to establish a challenge for cause. *Id.*

Improper commitment questions are considered harmful when they result in the trial of a defendant by a juror who prejudged him or some aspect of his case before hearing any evidence. *Sanchez v. State*, 165 S.W.3d 707, 714 (Tex. Crim. App. 2005). Factors to consider in determining such harm include, but are not limited to:

(1) whether the questions were unambiguously improper and attempted to commit one or more venireme[mbers] to a specific verdict or course of action;

(2) how many, if any, venireme[mbers] agreed to commit themselves to a specific verdict or course of action if the State produced certain evidence;

(3) whether the venireme[mbers] who agreed to commit themselves actually served on the jury;

(4) whether the defendant used peremptory challenges to eliminate any or all of those venireme[mbers] who had committed themselves;

(5) whether the defendant exhausted all of his peremptory challenges upon those venireme[mbers] and requested additional peremptory challenges to compensate for their use on improperly committed venireme[mbers];

(6) whether the defendant timely asserted that a named objectionable venirem[ember] actually served on the jury because he had to waste strikes on the improperly committed jurors; and

(7) whether there is a reasonable likelihood that the jury's verdict or course of action in reaching a verdict or sentence was substantially affected by the State's improper commitment questioning during voir dire.

*Id.* In his brief, appellant complains that his trial counsel was deficient for failing to object to over thirty questions that the State posed to five veniremembers during voir dire, including veniremember numbers 2, 3, 6, 10, and 26.[1] In regard to these questions, appellant argues that each was "a commitment question, improper under

---

[1] The complained-of questions span about ten pages of the reporter's record.

8

[*Standefer*,] . . .[w]hen the law does not require the commitment," and provides no other analysis.

Even if we assume error, appellant has not proven he suffered prejudice. *Strickland*, 466 U.S. at 694. With respect to the veniremembers who were asked the complained-of questions, the record is clear that none of them agreed to commit themselves to a specific verdict or course of action if the State produced certain evidence. *See Sanchez*, 165 S.W.3d at 714. Furthermore, none of the veniremembers that were posed the complained-of questions were selected as jurors. *See id*. The parties both agreed to strike five veniremembers for cause, including veniremember number 2, and both parties exercised ten preemptory strikes. The record indicates that the State exercised three of its preemptory strikes for veniremember numbers 3, 10, and 26; and that appellant exercised one preemptory strike for veniremember number 6. In other words, appellant did not exhaust "all of his preemptory strikes upon" veniremembers who were asked the complained-of questions. *Id.* Moreover, appellant did not request additional preemptory strikes to "compensate for their use on improperly committed venireme[mbers]." *Id.* Appellant does not argue that his attorney was deficient in failing to request additional preemptory strikes, but even assuming it was, appellant has failed to show a reasonable likelihood that the use of additional preemptory strikes would have resulted in a different outcome. *See id.* Appellant also did not timely assert that any named objectionable veniremember "actually serve[d] on the jury because he had to waste strikes on [any] improperly committed jurors."[2] *Id.* We conclude that the record does not

---

[2] After the trial court announced the veniremembers who were selected as jurors, the trial court asked the parties, "Is there a juror who has made the panel that was struck by either side," and both parties responded no.

9

support a finding that any juror participated in appellant's trial "who prejudged him or some aspect of his case before hearing any evidence." *Id.* Accordingly, appellant has not shown a reasonable probability that, but for his trial counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *Perez*, 310 S.W.3d at 893; *Williams*, 301 S.W.3d at 687. Appellant's first issue is overruled.

## III. PROSECUTORIAL MISCONDUCT

Appellant next argues that the State committed prosecutorial misconduct when they "offered [his] letter and unsworn declaration where he admitted to possessing the [heroin] in the vehicle."

Appellant points us to no relevant case law applicable to the facts of this case and does not provide pertinent legal authority related to the issue.[3] *See* TEX. R. APP. P. 38.1(i) (stating that appellant's brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Lopez v. State*, 672 S.W.3d 915, 928 (Tex. App.—Corpus Christi–Edinburg 2023, pet. ref'd) (holding that appellant's issue was waived through failure to provide citations to the record and to pertinent legal authority). "[A]n appellate court has no 'obligation to construct and compose [an] appellant's issues, facts, and arguments with appropriate citations to authorities and to the record.'" *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) (quoting *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)). We conclude

---

[3] In his brief, appellant cites to one case to support his claim. The case supports the general proposition that both the unknowing and "knowing use of perjured testimony is a trial error which garners a harmless error analysis" by the reviewing court. *Ex parte Chabot*, 300 S.W.3d 768, 771 (Tex. Crim. App. 2009). Accordingly, the "applicant has the burden to prove by a preponderance of the evidence that the error contributed to his conviction or punishment." *Ex parte Fierro*, 934 S.W.2d 370, 375 (Tex. Crim. App. 1996). Appellant provides us with nothing further than to direct us to "[s]ee the application of the law to the facts in issue number one."

appellant has waived this issue through inadequate briefing. *See* TEX. R. APP. P. 38.1(i).[4]

Appellant's second issue is overruled.

## IV.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
21st day of August, 2025.

---

[4] TEX. R. APP. P. 47.1. ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal").